GREGORY *v.* VILLAGE OF LAKE LINDEN.

1. PAROL EVIDENCE—WRITTEN CONTRACT.

Parol contemporaneous evidence is inadmissible to vary or contradict the plain terms of a valid written contract.

2. SAME—DOUBTFUL TERMS.

Parol evidence of the circumstances under which a written contract was made is admissible to explain terms of doubtful meaning.

3. CONTRACT TO SUPPLY WATER—CONSTRUCTION.

The defendant village agreed to purchase of plaintiff, for a term of 10 years, "as much water from his spring as it might need or desire, for any and all purposes," at $200 per month for any quantity not exceeding 1,500,000 gallons, and 15 cents per 1,000 gallons for all water used in excess of that quantity. It was agreed that plaintiff should not be bound to furnish a greater supply of water than his spring would yield. In an action on the contract, plaintiff claimed that the village was bound to take all the water it used for any purpose. *Held:*

(1) That evidence that the village, at the time of the contract, had a partial supply of water, which it continued to use for eight years without its right to do so being questioned, was admissible to show the interpretation put upon the contract by the parties.

(2) That the contract did not require defendant to take all its water from plaintiff.

Error to Houghton; Streeter, J. Submitted December 13, 1901. (Docket No. 122.) Decided April 22, 1902.

*Assumpsit* by Patrice Gregory against the village of Lake Linden for the breach of a contract for water. From a judgment for plaintiff, on verdict directed by the court, for less than the amount claimed, he brings error. Affirmed.

*P. H. O'Brien* ( *Gray, Haire & Rice,* of counsel), for appellant.

*W. E. Gray* ( *Chadbourne & Rees,* of counsel), for appellee.

Moore, J. The plaintiff, by direction of the judge, recovered a verdict of $186. He claims he was entitled to recover $685.06, and has brought the case here by writ of error. The questions involved are so clearly stated by the trial judge in his charge to the jury we insert it here:

"The plaintiff in this case, Patrice Gregory, sues the defendant, the village of Lake Linden, to recover certain sums of money which he claims to be due him from it under the terms of a contract entered into some time in the year 1892 between the defendant village and Joseph Gregory.

"Some question has been made during the progress of the case as to whether a contract was entered into that was binding upon the parties, covering the subject-matter; and I charge you that, under the undisputed evidence in this case, the defendant, by its acts, has recognized this contract as being in existence, and that it is bound by its terms. It seems to me that there can be no question about that. Dealings have been had from month to month, for a period of eight years, complying, so far as the testimony in this case shows, entirely with the terms of the contract; so that the question of whether the contract, at the time it was signed by the president and clerk of the village and by Mr. Joseph Gregory, was one which was properly entered into, does not affect the merits of the plaintiff in this case.

"I charge you that the right of the plaintiff to recover from the defendant in this case depends upon the construction of the written contract introduced in evidence on the trial; and it is the duty of the court to construe the written instrument, and state what the legal effect of it is or may be. Where parties make a bargain, and finally reduce the terms of that bargain to writing, the writing contains, as a matter of law, whatever the bargain finally is, and testimony to change its terms and make it something else, no matter what negotiations have passed between the parties to the contract before, will not be received or considered in construing the contract.

"This contract, among other things, provides as follows:

"'That the said second party [the defendant village] agrees to buy from said first party [the plaintiff, Gregory], and said first party [the plaintiff, Gregory] agrees to sell and deliver to said second party [the defendant village], at the eastern boundary line

of said village, at or near the plant of the Peninsula Electric Light
& Power Company, during the 10 years ensuing the 1st day of
November, 1892, as much water from said spring as such village
may need or desire, for any and all purposes, at the price and rate
of $200 per month for any quantity not exceeding 1,500,000 gallons;
all water over such quantity used in any month to be paid for at
the rate of 15 cents per 1,000 gallons.'

"The theory of the plaintiff in this case is that the
terms of the contract which I have just read to you are
plain, and require Gregory to furnish to the village all the
water the village may require, and require the village to
take from Gregory all the water that it uses for any pur-
poses, limited only by the capacity of the Gregory spring;
and that the village is bound to pay for all the water that
it uses, no matter from what source it may obtain the sup-
ply.    Now, the court has no right to read anything into a
written instrument that is not there; but the defendant,
on its part, claims that the construction given to this part
of the contract by the plaintiff is not one which is plainly
conferred by the words used, even when the words are
considered in their ordinary, common, everyday sense, but
that the proper reading of this part of the contract is that
the village shall take from the Gregory spring all such
water as it may desire for any of its purposes, and that
the village then obligates itself to pay for the water; if it
takes any quantity less than 1,500,000 gallons, it has to
pay the fixed sum of $200 per month; if it takes any more
than that, it has to pay for the excess at the rate of 15
cents per 1,000 gallons.    Now, if the portion of the con-
tract which I have read in your presence were all that is
contained in the written instrument, the task of the court
might perhaps be somewhat lessened from what it is; but
all the contract must be taken, in considering the legal
effect which must be given to it.    The contract is as fol-
lows:

"'This agreement, made and entered into this 20th day of Octo-
ber, A. D. 1892, by and between Joseph Gregory, of Houghton
county, Michigan, of the one part, and the village of Lake Linden,
of said county, of the other part.

"'*Whereas,* said second party, by its proper corporate officers
and agents, has considered the question and determined that the
health, general welfare, and necessities of the inhabitants of said
village require that a suitable supply of pure water be obtained for
their use; and

"'*Whereas*, said first party is the owner of a stream of such water, situated on the north half of section 3, in township 55 north, of range 32 west, in said Houghton county, which water he is willing to sell and dispose of; and

"'*Whereas*, said spring, owing to its elevation, location, and quality of its water, is the only available source of water for said village:

"'Now, therefore, said parties agree as follows: · [Then comes the part that I have already read to you]. Payments are to be made monthly, in cash, for all water used in and during the preceding month. Should any sums remain past due and unpaid for a period of 10 days, said first party may shut off the supply of water, and this contract shall thereupon and thenceforth, at the option of said first party, be null and void.

"'It is expressly understood and agreed that said first party shall not be obliged, under this contract, to furnish or deliver a greater supply of water than said spring will yield, and in case said spring fail to supply as much water as said village may need, not exceeding 1,500,000 gallons, said village need then only pay for the water actually furnished at the rate of 20 cents per 1,000 gallons.'

" In considering any written agreement made between parties, the circumstances under which the contract was made may always be considered, when at al necessary to throw any light whatever upon what the parties have expressed in their writing, so long as they do not vary the terms and change the written contract. Now, it appears from the testimony that has been given in this case that, at the time of the entering into this contract between the village of Lake Linden and Mr. Joseph Gregory, the village of Lake Linden had a system of waterworks of some capacity, to some extent. The testimony shows that it had a reservoir, and pipe laid through the village, which was connected with the reservoir. The testimony also shows that from the time this contract was entered into, during all the eight years in which this contract has been in force, that line and that reservoir has been used by the village for village purposes. That it has used the water for fire purposes, for sprinkling the streets, for furnishing the Bosch Brewing Company, for furnishing certain dwelling houses, and for furnishing livery stables, and that that use has been constant during all those eight years, are circumstances which seem 'to me have a great deal of bearing upon the intention of the parties when they entered into this contract, and the construction that ought to be given to it. There is no claim in the case

here that this system belonging to Lake Linden was unknown to Mr. Gregory, or to the plaintiff in this case, or that the use of that system after this contract was entered into was unknown to either of them. The section of this contract which I last read, where it provides that the said first party, Mr. Gregory, shall not be obliged to furnish any more than the capacity of his spring, and contemplated the possibility that the spring might not furnish the 1,500,000 gallons, is another circumstance, which is embodied in this written contract, which, it seems to me, throws a good deal of light upon the understanding that the parties had at the time the contract was entered into. It is not a contract by which the party of the first part agrees to furnish all the water that the village uses, and the village agrees to take water from no other source. If it were such a contract, then there would be nothing for us to do in this case. But it seems to me that, under the words of this contract (which seem to have been selected with great care), the proper construction to put upon it is the one which is mainly contended for on the part of the defendant, considering the circumstances under which the contract has been made, and the interpretation which must have been put upon it by the first party and his successor, the plaintiff in this suit, all those eight years.

"The agreement to sell and deliver, and the agreement to buy on the part of the village, and the price to be paid, are all to be taken in one sentence; and the one who drew the contract, as I have said, seems to have selected his language with care, and a desire to express just what the parties meant at the time they entered into the contract. Now, there is an agreement on the part of the first party to sell and deliver, and on the part of the village to buy, as much water from said spring as such village may need or desire, for any or all purposes, at the price and rate of $200 a month for any quantity not exceeding 1,500,000 gallons. Now, having used the terms 'as much water from the spring,' not 'all the water from the spring,' and not 'all the water that the village shall use,' but 'as much as they may need or desire,' the expression is this: 'All water over such quantity used in any month,' not 'all water needed for the purposes of the village,' not 'all water desired for the purposes of the village,' but 'all water used during any month,' is to be paid for at a certain rate per 1,000 gallons. Now, if the true construction of the contract is as plaintiff claims in this case, the reason for

expressing the conditions which have been put into the writing in the two different ways is one that I cannot understand at all.

"It seems to me, then, that, considering the fact that the village already had waterworks, which were in operation and existence,—notoriously so,—that it has continued to use those waterworks from that time, without interruption, during the eight years, without objection, so far as anything appears in this case, on the part of Joseph Gregory or his assignee, the present plaintiff, the fact that he was not obliged to furnish anything beyond the capacity of the spring, the fact that the village was obliged to pay him, no matter whether it used the water or not, the sum of $200 a month, without any exception, for each and every month during the 10 years, and then the expression that, for the amount of water used in any month above that amount, it was to pay a particular sum,— taking all these things into consideration, it seems to me that the fair, reasonable construction of that contract is that the village is obliged to pay $200 a month to Mr. Gregory during the time of this contract, unless his spring absolutely fails to furnish any water whatever; that it is not obliged, under the terms of this contract, to take any water from him and actually use it.   If it does use it, it must pay for it.

"There is no question but what, during all of the months shown by the book that was introduced in evidence, the defendant paid an amount varying from $200 during the various years to over $600 in the one month. That is in the testimony of the plaintiff himself.   There is no regularity about the matter at all; and so, so far as the claim on the part of the plaintiff for the two months of October and November in 1900, there being no claim at all that the village used any water in excess of $200 during those months, I think he has failed to make a case. As to the amount held back by the village in the year 1897 ($150), there has been no testimony introduced on the part of the village which satisfies me, or any of you, that it had any right to hold that money back, and therefore I direct you to render a verdict in favor of the plaintiff for the sum of $150, together with interest from the first of May, '97.   I therefore direct you, gentlemen, to render a verdict in favor of the plaintiff for $186."

It is conceded by counsel for both parties that all the questions raised depend for their solution upon the con-

struction which shall be given to the contract.   We agree
with counsel for plaintiff that parol evidence is not admis-
sible to vary or contradict the plain, unambiguous terms of
a written contract.   *Kulenkamp* v. *Groff*, 71 Mich. 675
(40 N. W. 57, 1 L. R. A. 594, 15 Am. St. Rep. 283);
*Nichols, Shepard & Co.* v. *Crandall*, 77 Mich. 401 (43
N. W. 875, 6 L. R. A. 412); *Hoag* v. *Graves*, 81 Mich.
628 (46 N. W. 109); *Brown* v. *Schiappacasse*, 115 Mich.
47 (72 N. W. 1096).   But it is equally true that, where
the language used is of doubtful meaning,—is susceptible
of different interpretations,—oral evidence is admissible
for the purpose of explaining or interpreting the contract.
It is said by one author:

"For the purpose of applying the instrument to the
facts, and determining what passes by it, and who take
an interest under it, every material fact that will enable
the court to identify the person or thing mentioned in the
instrument, and to place the court, whose province it is
to declare the meaning of the words of the instrument, as
near as may be in the situation of the parties to it, is ad-
missible in evidence."   See note *g* and cases cited, 2 Pars.
Cont. (5th Ed.) p. 560.

"It is a fundamental rule that, in the construction of
contracts, the courts may look, not only to the language
employed, but to the subject-matter and the surrounding
circumstances, and may avail themselves of the same light
which the parties possessed when the contract was made."
*Merriam* v. *U. S.*, 107 U. S. 437 (2 Sup. Ct. 536).

We think the language used in the contract is such
that, for the purpose of putting the correct interpretation
upon it, it is competent to show the interpretation put
upon it by the parties, the circumstances under which it
was made, and the acts of the parties then and since that
time.   At the time the contract was made, the village had
a partial supply of water, which it was then using, and
has continued to use.   It has been used for fire purposes,
and to supply a brewery and livery stables.   If it had
been contemplated it should cease to use this supply, and
get its entire supply from Mr. Gregory, it would have

been easy to so provide in the contract.   It did not so provide, and the village did not cease to use the water, but continued to use it all the years until Mr. Gregory's death, without its right to do so being questioned.   The village might consider the water it was using quite good enough for fire purposes and for use in livery stables, and not contemplate giving up its use for that purpose, while for other purposes it desired spring water.   After reciting that Mr. Gregory was the owner of the spring, the agreement is to take "as much water from said spring as such village may need or desire," etc.   We are of the opinion the judge rightly construed the contract.

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.   LONG, J., did not sit.