The plea being here one of ratione materiæ presents the only issue for decision.

By filing the answer, defendants in effect waived jurisdiction ratione personæ, and, in addition, we will not undertake to sustain the plea of want of jurisdiction ratione personæ on an exception of want of jurisdiction ratione materiæ.

Furthermore, parties may waive jurisdiction ratione personæ. Phipps v. Snodgrass, 31 La. Ann. 88; Marqueze v. Le Blanc, 29 La. Ann. 194; Ranlett v. Collier White Lead Co., 30 La. Ann. 56; Stackhouse v. Zuntz, 36 La. Ann. 529.

This court has decided that the filing of the answer without objection was in effect a waiver of jurisdiction ratione personæ.

A very similar question was passed upon in State v. Buck, 46 La. Ann. 656, 15 South. 531, and in that case effect was given to the appearance which had been filed before the exception was interposed by the defendant.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed.

It is ordered, adjudged, and decreed that the case be reinstated for trial and be tried as if it had not been dismissed.

Appellees to pay costs of the appeal, and the costs of the lower court to await final decision of the case.

═══════

(47 South. 754.)

No. 15,369.

ANSE LA BUTTE (LE DANOIS) OIL & MINERAL CO., Limited, v. BABB.

(Nov. 16, 1908.   On Rehearing, Dec. 14, 1908.)

1. ASSIGNMENTS (§ 19*)—CONTRACTS ASSIGN-
ABLE—SERVICES—"PERSONAL OBLIGATION."

A contract giving D. exclusive right to drill in defendant's land with a view of finding commercial substances, and in case of success with-in 90 days thereafter to pay defendant $100 per arpent for a conveyance of the land, did not impose a personal obligation on D. within Civ. Code, art. 2000, declaring an obligation personal when the obligor undertakes to perform anything that requires his personal skill and attention; and hence the contract was assignable.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 28–31; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, vol. 6, p. 6346.]

2. MINES AND MINERALS (§ 54*)—EXPLORA-
TION CONTRACT—SALE OF LAND WITH MIN-
ERALS—CONSTRUCTION.

Where defendant gave plaintiff's assignor the exclusive right to explore certain land for mineral substances, the assignor agreeing, in case of success, on said land or on certain other lands of the neighborhood specified and named in the contract, to pay defendant $100 per arpent for the land within 90 days after success, the assignor was not bound to drill to find commercial substances, but was only required to buy the land at the price specified in case of success in finding commercial substances therein or in said other lands.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 54.*]

3. ASSIGNMENTS (§ 18*)—CONTRACTS ASSIGN-
ABLE.

Under Civ. Code, art. 2448, providing that all things of value, corporeal or incorporeal, may be the subject of sale, a contract to explore mineral land was assignable though it made no mention of assigns or of the right to assign.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 25–31; Dec. Dig. § 18.*]

4. ASSIGNMENTS (§ 73*) — CONSTRUCTION —
RIGHTS ASSIGNED—DESCRIPTION.

Certain associates, having acquired mineral leases, options, promises of sale, etc., and having contracted that all rights secured by any of them should be for the interest of all, executed a power of attorney to one of their number directing him to assign all of the contracts to plaintiff. The assignment described the property assigned as all the associates' rights, titles, and interest to oil and mineral contracts, options, and sales which had been acquired by them in the name of either or all of them and in which they were interested, according to a specified contract, which options, rights, interest, etc., were more specifically set out as follows: [Followed by a list of contracts, omitting by oversight one secured by one of the associates from defendant.] Held, that such omitted contract passed under the general description, under the rule that general terms will not be controlled by particular terms when a contrary intention manifestly appears from the surrounding circumstances.

[Ed. Note.—For other cases, see Assignments Cent. Dig. § 142;  Dec. Dig. § 73.*]

5. MINES AND MINERALS (§ 54*)—CONTRACTS —SALE OF LAND WITH MINERALS — CONSTRUCTION—POTESTATIVE CONDITION.

Civ. Code, art. 2034, provides that every obligation is null that has been contracted on a potestative condition on the part of him who binds himself, and article 2035 limits the previous section to such conditions as make the obligation depend solely on the exercise of the obligor's will, excluding conditions that the obligor shall do or refrain from doing a certain act. *Held*, that a contract by which plaintiff's assignor was to purchase the land in controversy in case of success in finding commercial substances therein was not void because the assignor might prevent success by abstaining from drilling on any of the land.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 54.*]

6. MINES AND MINERALS (§ 54*)—CONTRACT OF SALE—VALIDITY.

A contract to permit plaintiff's assignor to prospect defendant's land for mineral substances, and in case of success to purchase the land from defendant at a specified price, was but a promise of sale, subject to a suspensive condition, and was not void, because no time was fixed, as in restraint of trade, and a perpetuity, or contrary to public policy.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 54.*]

7. VENDOR AND PURCHASER (§ 75*)—CONTRACT —CONSTRUCTION—TIME OF PAYMENT.

A contract for the sale of land on payment, 90 days after success, in finding mineral substances therein, should be construed to require payment within, and not after, 90 days.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 116–121; Dec. Dig. § 75.*]

8. MINES AND MINERALS (§ 83*)—EXPIRATION AND SALE OF CONTRACT—CONSTRUCTION.

Where a contract permitted plaintiff's assignor to explore certain oil land, and provided for a sale to him at a specified price if paid within 90 days after success on the land, the finding of oil in less than paying quantities, or the finding of a stratum of salt several hundred feet below the surface, was not a "success" in finding commercial substances, within the contract.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 83.*]

9. CONTRACTS (§ 169*) — CONSTRUCTION — EXTRINSIC CIRCUMSTANCES.

Facts of public notoriety relating to the subject of a contract must be presumed to have been known to the parties at the time the contract was made, and the language used must be construed with reference to such facts.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 169.*]

10. SPECIFIC PERFORMANCE (§ 97*)—REQUISITES — OFFER TO PERFORM — DEPOSIT IN COURT.

In a suit for specific performance of a contract to convey land, it was sufficient for plaintiff to offer to perform without depositing the price in court.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 286–298; Dec. Dig. § 97.*]

On Rehearing.

11. APPEAL AND ERROR (§ 835*)—REHEARING —AFFIDAVITS.

Affidavits filed in support of an application for rehearing cannot be considered as evidence on such rehearing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3241, 3242; Dec. Dig. § 835.*]

12. SPECIFIC PERFORMANCE (§ 120*) — EVIDENCE—RELEVANCY.

Where, in a suit for specific performance of a contract to convey on payment within 90 days after discovery of mineral on the land, the answer alleged that it was the duty of plaintiff or its transferror to notify defendant of the acceptance of the option vested in them and to perfect the same by purchase of the property, which they failed to do within 90 days from the discovery of salt deposits, evidence to prove the transfer of the contract to plaintiff was irrelevant.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 120.*]

13. CONTRACTS (§ 218*)—POTESTATIVE CONDITIONS.

A potestative condition in a contract. ceases to be such when it is fulfilled.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 218.*]

Appeal from Nineteenth Judicial District Court, Parish of St. Martin; T. Don Foster, Judge.

Suit by the Anse La Butte (Le Danois) Oil & Mineral Company, Limited, against Alfred Babb for specific performance. Judgment for defendant, and plaintiff appeals. Reversed.

Martin, Voorhies & Martin, Walter James Burke, Robert Martin, Ventress Jones Smith, and Philip H. Mentz, for appellant. Robert Lynn Batts, J. C. Devereux, and Ivy Green Kittridge, for appellee.

PROVOSTY, J. Plaintiff sues for specific performance of the following contract, of which it claims to be the assignee:

"Between the undersigned, Alfred Babb of the parish of St. Martin on the one part, and Paul Le Danois of the parish of Vermilion, on the other part, it has been covenanted and determined that which follows:

"Alfred Babb gives to Paul Le Danois the exclusive right to drill with the view of finding commercial substances of whatever nature on his land, situated in the parish of St. Martin, containing approximately sixty arpents: bounded north by Antoine Patin, south and west by Ambroise Begnaud, and east by Ozaire Guidry.

"In case of success on his land, or on the lands of Honore Breaux or Ambroise Begnaud, P. Le Danois engages himself to pay for this property, ninety days after success, one hundred dollars per arpent, and Alfred Babb engages himself to pass act of sale on that land to P. Le Danois."

The first defense is that the contract was not assignable, and, if assignable, has not, as a matter of fact, been assigned.

The first reason given why the contract is said not to have been assignable is that it is personal on the part of the obligor, Le Danois.

An obligation is said to be personal on the part of the obligor when he "undertakes to perform anything that requires his personal skill and attention." Civ. Code, art. 2000. The example usually given of such an obligation is that of a painter who undertakes to execute a portrait.

Defendant argues that the obligation "to drill with a view to finding commercial substances" is purely personal on the part of the obligor.

Granting, argumenti gratia, that this is so; this contract does not purport to impose any such obligation upon Le Danois: the only obligation it imposes upon him is to buy the property at the price of $100 per arpent in case of success in finding commercial substances upon any one of the three specified tracts of land.

The next reason given why the contract is said not to be assignable is that no mention is made in it of assigns, or of the right to assign.

But, manifestly, there was no need of any such mention, since a man may assign whatever right not purely personal to himself he may be the owner of. The rule is that all things of value, incorporeal as well as corporeal, may be made the subject of sale. Civ. Code, art. 2448.

Passing to the next defense, that the contract was never, in point of fact, assigned, we find the facts to be as follows:

Le Danois, W. J. Burke, Robert Martin, and W. T. Blackman were associates for securing oil and mineral leases, options, and promises of sale in the so-called Anse La Butte oil field, where the land in question is situated. These associates entered into a written agreement by which any contract which any one of them had theretofore secured, or might thereafter secure, should be for the interest of all; and in this agreement the contract now sued on is specifically named as being one of those already secured.

Thereafter the associates of W. J. Burke executed a power of attorney to him empowering and directing him to transfer to the plaintiff company all the contracts acquired by them or either of them; and among the contracts specifically named as having thus to be transferred is the contract now sued on. In pursuance of this power of attorney, Burke made an assignment to the plaintiff company which was manifestly intended to include all the contracts. The description of what is transferred reads as follows:

"All our right, titles and interest to the oil and mineral contracts, options, and sales which have been acquired by the vendors in the name of either or all of them, and in which they are interested as is set forth in the contract entered between them, recorded in Book No. —— of Conveyances, folio No. —— of the clerk's office of the parish of St. Martin, and which options, rights and interests to minerals, oil or gas, are more especially set forth as those obtained and acquired from the persons following to-wit:"

Here follows a list of 29 contracts, among which that with Babb (now sued on) is not included.

Ordinarily, general terms are controlled by particular; but this is not the case where, as here, a contrary intention appears manifestly from the surrounding circumstances. From the previous agreement of the parties, especially from the power of attorney, the conclusion is absolutely unavoidable that this Babb contract was intended to be, and was actually transferred, along with the other contracts, and was omitted from the list simply by oversight.

This accidental omission was discovered on the trial, and was sought to be remedied by a supplementary act; and this act was offered in evidence and defendant objected to it on the ground that the rights of plaintiff had to be determined as of the day of the filing of the suit. Whether such a curative act would have a retroactive operation is a question needless to be considered, since we hold that the contract was transferred by the original act.

The next defense is that the condition upon which Le Danois agreed to buy the land— in case of success in finding commercial substances upon it or upon the land of Honore Breaux or that of Ambroise Begnaud—was potestative on his part, since he might have, at will, prevented success by abstaining from drilling upon any of the said lands, and renders the contract null.

The contract does not stipulate that the drilling upon the success of which the contract is conditional is to be done by Le Danois, hence, the fulfillment of the condition did not depend upon his will.

True, he secured, by the same contract, the exclusive right to drill upon the Babb land, and had already secured, or secured thereafter, on the same day, by another contract, the ownership of the Begnaud land, and may therefore, in a sense, be said to have been in a position to defeat the condition at will as to these lands by abstaining from drilling upon them; but the Breaux land re-mained, which he never controlled, and which the plaintiff company did not contract for until three months later, viz., April 24, 1901. In connection with this Breaux land, the condition can in no sense be said to have been potestative. Anybody might have drilled upon it—Breaux or anybody else—and brought about success and the fulfillment of the condition.

Nor is this all. It is not every potestative condition that renders null the obligation to which it is attached. Article 2035, Civ. Code, speaking of article 2034, according to which "every obligation is null, that has been contracted on a potestative condition, on the part of him who binds himself," says:

"The last preceding article is limited to potestative conditions which make the obligation depend solely on the exercise of the obligor's will; but if the condition be that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition is not void."

If this article 2035 were taken literally, the contract would not be null, no matter to what extent the act upon which the obligation depended might be at the will of the obligor. The civilians explain, however, that the act, upon the doing or not doing of which the obligation is made to depend, must not be so easy of performance or so insignificant as in reality to leave matters to the mere will of the obligor; as, for example, if the obligation was to depend upon whether the obligor "raised his arm, or drank a glass of wine, or wore his grey hat." Le Carpentier et Du Saint, Rep. de Droit Francais, Vo. Condition, No. 100. The question whether the act upon which the obligation is to depend is, or not, of the character here described, is one of fact, to be determined from the particular circumstances of each case. Id. No. 101.

In the instant suit, the only way in which drilling, and the consequent possible fulfillment of the condition, could have been pre-

vented upon the Breaux land, would have been by securing the control of the land by some onerous contract. The facts of the case leave no doubt, therefore, that the fulfillment of the condition was not purely potestative.

Even as to the Babb and Begnaud lands, the plaintiff company could not have abstained from drilling upon them (in case of nonsuccess upon the Breaux land) without renouncing the benefits which had been sought to be secured by entering into the contracts with reference to them and renouncing the benefit of the large expenses incurred; and the renunciations would not have been such insignificant acts as are described above as depending solely upon the will of the obligor, namely, abstaining from raising one's arm, or drinking a glass of wine, or wearing one's grey hat, but would have meant the sacrifice of important rights.

The next defense is that the contract fixed no time, and that, therefore, if valid, it perpetually cut Babb off from exploring his lands for minerals, and was therefore in restraint of trade and a perpetuity, and, as such, against public policy and void.

As we read the contract, it was nothing more than a promise of sale subject to a suspensive condition.

The next defense is that the offer to perform the contract was made too late.

The term fixed in the contract is "ninety days after success." Granting that the parties meant within, and not after, ninety days (which we believe is the case); and granting, also, that they did not merely mean to fix the date when payment should be due, but meant to impose a condition, as if they had said "provided that payment be made within ninety days" (which we do not believe to be the case) we think there is, nevertheless, no merit in this defense. The facts are these:

The locality where the defendant's land is situated was an undemonstrated or unimproved oil field. Le Danois had been working in it 10 years when he entered into this contract. There were surface indications, and a well had been bored, five or six years previously, out of which there were tricklings of oil. The place is only 30 miles from the Avery salt mines, and the fact was known to everybody that throughout that region there is salt under the surface in varying quantities. At the date of the contract a well, known as the "Lucas Well," had been bored and had proved a failure, although oil in insignificant quantities had been produced by it. Immediately after entering into this contract, the plaintiff company set about getting ready to go to work, and within three months actually began the work of drilling. It bored two wells unsuccessfully, at a cost of over $18,000. It then leased a part of the Breaux tract to the Heywood Oil Company. That company had, at the date of this suit, bored two wells, known as "Heywood No. 1" and "Heywood No. 2." The latter well was begun after Heywood No. 1 had been abandoned as unsuccessful. It produced some eight barrels a day, and was considered a success; and the plaintiff company, within a few days thereafter, made to defendant a tender of the amount called for by the contract. Defendant refused the tender, on the ground that it came too late; that the term fixed by the contract had expired.

In support of that contention it is claimed that Heywood well No. 1 was a success, both as an oil producer, and as having demonstrated that there was under the land a stratum of rock salt several hundred feet in thickness; that this salt was a commercial substance within the terms of the contract.

Heywood No. 1 gushed several times, emitting gas, sand, and blue clay. The last time it gushed there was a little oil mixed with the gas, sand, and clay. Whether it would have continued to yield oil for any length of time if it had been left alone, no one can tell. All that is known is that those who had charge of the work choked off the gushing, as seems to be usual in such cases, to con-

tinue work, and nothing could be done with the well thereafter, and it had to be abandoned and another well begun. When thus stopped, it had produced one inch and a half of oil in a pit 12 feet long by 8 feet wide. In regard to the salt, the preponderance of the evidence is that a stratum of salt three or four hundred feet thick was met two or three hundred feet below the surface. Whether it was or not pure salt, is left uncertain.

We do not think that the finding of oil in less than paying quantities, or the ascertaining of the presence of this stratum of salt several hundred feet below the surface, was a success in finding "commercial substances" within the meaning of the contract. The parties knew, at the time of entering into the contract, that oil would be found in small quantities, and that salt in more or less great quantities underlay that region; and therefore, in using a term expressive of uncertainty in the result of the exploration to be thereafter made, they must have had in mind something else than these dribblings of oil, or this salt buried out of reach under the earth. "Facts of public notoriety relating to the subject of a contract must be presumed to have been known to the parties at the time of making the contract, and the language used must be construed in reference to these facts." Woodruff v. Woodruff, 52 N. Y. 53.

Where a village made a contract to take the water it might "need or desire for any and all purposes," extrinsic evidence was admitted to show that when the contract was made the village had a partial supply of water. Gregory v. Village of Lake Linden, 130 Mich. 368, 90 N. W. 29.

Whether, as contended by plaintiff, the 90 days for making the payment could not begin to run until defendant had put the plaintiff company in default, is a question that need not be considered. This much, however, may be said: That the officers of the plaintiff company did not look upon the result of Hey-

wood well No. 1 as amounting to the success contemplated by the contract, and that if defendant so considered it, and intended to act upon that view, it was incumbent on him, under the principles of fair dealing which should always prevail in matters of contract, to warn plaintiff company of his said intention, in order that the plaintiff company might not be taken by surprise. Defendant was present on the works every day, and yet said nothing to the plaintiff company of his intention (if, indeed, he had such an intention) of treating the result of Heywood No. 1 as constituting the success spoken of in the contract. If defendant was lying low for the plaintiff company, he has done so to no purpose. The plaintiff company seems to have acted throughout in most perfect good faith.

Defendant's next contention, namely, that plaintiff is not entitled to maintain this suit, because it has not deposited the price in court, assumes that such a deposit was necessary, when, as a matter of fact, it was not. Plaintiff did not have to do more than offer to perform the contract.

It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the Anse La Butte (Le Danois) Oil & Mineral Company, Limited, have judgment against the defendant, Alfred Babb, condemning and ordering him, upon the payment to him by the said company of $6,000, to execute in favor of said company an act of sale in notarial form, of the following described property, to wit:

A certain tract of land situated in the parish of St. Martin, bounded north by the land of Antoine Patin, south and west by the land of Ambroise Breaux, and east by the land of Ozaire Guidry, and containing about 60 arpents.

The cost of the said notarial act and its registry to be paid by the plaintiff company.

The time and place for the passing of said notarial act is hereby fixed in the clerk's

office of the courthouse of said parish of St. Martin, at 10 o'clock a. m. on the tenth day after the date on which the present judgment shall have become final, or, if said tenth day be a Sunday, then on the Monday following it; and should the said Alfred Babb not appear at the said time and place and pass said notarial act of sale, then the said plaintiff company may deposit the said $6,000 in one of the banks of this state, to be paid to the said Alfred Babb on demand, and take the receipt of the president of said bank for said deposit; and may then cause said receipt, together with the present judgment (leaving out, however, the reasons for judgment), to be recorded as in case of an ordinary cash sale, to serve as a title to said property; and that the defendant pay the costs of this suit.

## On Application for Rehearing

LAND, J. After a careful review of the record in this case and consideration of the application for a rehearing and the argument of the learned counsel, we see no good reason to change our opinion and decree.

The affidavits filed in support of the application cannot be considered as evidence for the purposes of a hearing in this court, and after the lapse of more than four years it is rather late to request the remanding of the case for additional evidence.

It may be conceded that the Babb-Le Danois contract was not expressly included in the transfer to the plaintiff company. It was, however, intended to be transferred, and all the parties in interest have recognized the title of the company. The defendant's answer virtually admits that plaintiff company is the transferee of Le Danois' right and obligations under the contract. The answer avers that "neither plaintiff or its transferror" obligated themselves to bore on defendant's land, or did bore thereon or on the other lands described in the contract, but others in their behalf drilled on the land of Begnaud in May 1901 and found a stratum of solid rock salt 400 feet thick at a depth of only 200 feet. The answer charges that it was the duty of "plaintiff or its transferror" to notify defendant of the acceptance of the option vested in them, and to perfect the same by purchase of the property, which they failed to do within 90 days from the discovery of the salt deposits. On the trial below defendant objected to evidence tending to prove transfers of the contract on the ground of "irrelevancy," and because the "defendant was in no wise concerned." Considering the answer, we think that this was the proper view.

It is next contended that the contract was null because without consideration and dependent on a potestative condition. We think that a perfect answer to this contention is that, conceding that the condition was potestative in the beginning, it was actually performed by the grantee and his assigns at a great expense, and with the active assistance of the defendant.

A condition which has been fulfilled ceases to be potestative. Murray v. Barnhart, 117 La. 1032, 42 South. 489.

The ground that the discovery of salt was the finding of a "commercial substance" within the purview of the contract has been fully discussed in the original opinion. All the surrounding facts and circumstances and the conduct of the parties show that salt was not within the contemplation of the contracting parties.

Rehearing refused.