On Rehearing
 

 HAMITER, Justice.
 

 As shown in the opinion rendered on the original hearing of this concursus proceeding, Arceus Guillory disputes, herein the claims of various persons to royalty interests affecting a certain tract of land which he owns.
 

 All of the claims are predicated on and grow out of an instrument executed by Guillory on January 19, 1923, by which he sold and conveyed to Augustus Hill Garland: “The undivided 'one fourth (1/4) interest in and to all royalties stipulated for or hereafter to be stipulated for, in any oil, gas or mineral lease, that may be or has been executed by vendor in favor of third persons and more particularly in that certain lease executed in favor of the Louisiana Oil & Refining Corporation * *
 

 The instrument further recited:
 

 “ * * * It being well understood and agreed that the interest herein conveyed is and will remain an interest in and (to) all contracts by the vendor with third persons for the explorations and development of the said lands- for oil, gas or other minerals, the purchaser not to participate with the vendor in any of the proceeds of the rental of the said land for said purposes, but only to share in the royalties in the proportions above set forth.
 

 “This grant to be continuous and to run with the land into whomsoever’s hands it may fall; by assignment, bequest, devise, or otherwise.”
 

 Garland, on August 4, 1925, executed an act of sale conveying one-half of his acquired interest to “R. M. Hallowell, for self and as Trustee for O. D. Keller; S. M. ■Le.e; C. H. Fenstermaker, all residents of
 
 *332
 
 the Parish of Allen, here present, purchasing and accepting for himself and them, his and their heirs and assigns, and acknowledging delivery and possession thereof * * *”. The consideration for the sale, according to the act, was “the price and sum of $2,000.00, cash in hand paid, the receipt whereof is hereby acknowledged * * * None of the persons named therein as vendees signed the instrument or has since sold any portion of the interest purchased.
 

 Later, Garland conveyed his remaining one-half interest to H. M. Journee; and thereafter the latter, through two sales, divested himself of it. His vendees, their heirs or assigns are among the claimants herein.
 

 On May 21, 1928, death occurred to Mrs. Mattie Andrews Fenstermaker, wife of C. H. Fenstermaker (named in the act of August 4, 1925). Surviving, besides her said husband, were four minor children who were issues of their marriage.
 

 On June 13, 1938, the Humble Oil & Refining Company acquired an oil, gas and mineral lease on the land (the previous lease in favor of Louisiana Oil & Refining Corporation having expired), and on February 13, 1942, some nineteen years after the execution of the Guillory-Garland deed, it completed under the lease an oil producing well. On the occurrence of this completion two of the Fenstermaker children were still minors.
 

 Following the development of the dispute between Guillory and the various persons claiming royalties through his conveyance to Garland on January 19, 1923, the lessee instituted this proceeding. The district court rendered judgment, after a trial of the merits, recognizing the landowner as being the owner of the entire disputed royalty interest. All of those opposing him (their claims were rejected) appealed.
 

 It is the position of appellants that Fenstermaker, under the deed of August 4, 1925, acquired from Garland (who had previously purchased from Guillory) a
 
 Vzsn
 
 royalty interest; that on the death of Mrs. Fenstermaker her minor children inherited her one-half community interest in the royalty; and that because of the minority of these children, and pursuant to the provisions of Civil Code, Article 802, the prescription of ten years liberandi causa was suspended not only as to the interest of such minors but also as to that of all of their coproprietors (all of those claiming through the Guillory deed) up to and including the date of the completion of the producing oil well. They urge, therefore, that the royalty conveyed by Guillory is still outstanding and it belongs to them in the proportions asserted.
 

 In assailing the claims of appellants, the landowner through his counsel, offers numerous alternative contentions. First, he insists that G. H. Fenstermaker acquired no
 
 *333
 
 interest under the deed executed by ■ Gar*land on August 4, 1925, and hence, upon the death of his wife on May 21, 1928, his minor children did not inherit an interest in the royalty. This deed, as before shown, recited a conveyance to Hallowell, for self and as trustee for Keller, Lee and Fenstermaker; and it was signed only by the vendor. Under this first alternative contention it is argued that the sale was never accepted because not one of the named vendees affixed his signature to the instrument; further, that R. M. Hallowell, designated as trustee, had no written evidence of his authority to act for C. H. Fenstermaker and the others, and that he at no time assigned, by valid written act, any interest to them.
 

 There was no need for any or all of the named vendees to formally accept the act of sale. The conveyance was a cash transaction; and the payment of the $2,000 purchase price, acknowledged by the vendor in the instrument, constituted a complete acceptance. Beard et al. v. Nunn et al., 172 La. 155, 133 So. 429.
 

 Regarding the other argument, the record shows that Fenstermaker personally paid to Garland (by check) his portion of the purchase price. Also, it discloses that a few days after the execution of the deed Hallowell gave to each of his co-purchasers in the transaction, including Fenstermaker, the following letter:
 

 “Elizabeth, La.
 

 August 17, 1925.
 

 Mr. S. M. Lee,
 

 Mr. C. H. Fenstermaker,
 

 Mr. O. D. Keller,
 

 Elizabeth, Louisiana.
 

 Dear Sirs:
 

 This is to advise that purchase made from A. IT. Garland of Opelousas of
 
 Vei
 
 royalty on certain tracts of land in the Pine Prairie territory, which is deeded to me as Trustee, is held by me, and interest in said purchase is J4 equal interest for each of you and for myself.
 

 Yours very truly,
 

 R. M. Hallowell Trustee
 

 RMH :EKA”
 

 In view of these facts and the circumstances hereafter mentioned we must hold that Fenstermaker, particularly in so far as Guillory was concerned, acquired a definite interest.
 

 When Guillory, in a cash transaction, conveyed to Garland, the latter was vested with the right to sell his interest to any one he chose and in any manner he pleased, Guillory’s control of it during the period of its existence, in other words, was completely relinquished, and he was without right to complain about a lack of evidence in proof of the Fenstermaker title. And especially is this so since neither Garland nor Hallowell has complained. In fact, each of these persons, by. his pleadings in
 
 *334
 
 this cause, has judicially recognized Fenstermaker’s interest. Of course, it happened that the minor children of Fenstermaker inherited the interest of their mother prior to the lapse of ten years from the date of the original deed (a circumstance that was perhaps disadvantageous to Guillory) ; hut' that was a mere legal consequence of the sale to Garland.
 

 For us to rule otherwise, we would he compelled to overrule a conclusion reached in the comparatively recent case of Standard Oil Company of Louisiana v. Futral et al., 204 La. 215, 15 So.2d 65, 73, and which was based on a substantially identical factual situation.
 

 In that case Futral, the landowner, had conveyed to one Van Geffen a certain mineral interest. Although the latter was the only vendee named in the act of sale (in the instant case all vendees were named), he was purchasing not only for himself but also for six other persons concerning whom he wrote a letter and therein listed their respective portions. Among these co-purchasers were Charles R. Houssiere and Nathan Rosenberg. Within ten years after the acquisition, the wife of each of the two last-named persons died leaving minor children. Futral, with respect to the issue of whether prescription had been suspended by reason of the minority of such children, •contended that Houssiere and Rosenberg never in fact acquired any interest in the sale to Van Geffen. On this point we said .and held:
 

 “Under the terms of the above quoted letter and according to the testimony of Van Geffen, it is clear that the purpose of the letter was to show that Van Geffen purchased the property, not for himself alone, but for himself and those named in the letter, in the proportions set out therein. Van Geffen in his testimony makes this perfectly clear. He says that, at the time the property was purchased, one of the Houssiere brothers was with him, and that it was understood that the purchase price of $3,500 was to be paid by draft drawn on ‘H. A. Houssiere & Bro.’, which was done. And it was then clearly understood that the interest in the minerals was acquired, not for himself alone, but for himself and the others mentioned.
 

 “Since Van Geffen is not complaining, but concedes that the others named in the letter own the undivided interests in the minerals as set out therein, Futral has no right to complain, because he does not now deny that by his sale to Van Geffen he divested himself of title to an undivided
 
 Vei
 
 of his minerals or mineral rights.”
 

 To support the argument herein that Fenstermaker acquired no interest, counsel has cited numerous other decisions in our jurisprudence. All have been considered; but they are not applicable here, being distinguishable particularly on the facts.
 

 Next, the landowner (Guillory) contends alternatively that his deed to Garland on January 19, 1923, conveyed only a one-fourth interest in. the royalty provided for'
 
 *335
 
 in the lease then existing in favor of the Louisiana Oil & Refining Corporation (a rent royalty), and it expired upon the lapse of the lease; and, further, that the additional stipulation in the deed, conveying an interest in royalty under any future lease or contract executed by the vendor with third persons, was and is reprobated by law in that it was potestative in nature and an attempt on the part of the contracting parties to grant a perpetual right in Garland.
 

 On the original hearing in this court, merit was found in the contention. After further consideration, however, we have reached a contrary conclusion. The interest conveyed by Guillory t'o Garland was a mineral royalty (not a rent royalty) running with the land. Except in a few minor particulars hereinafter mentioned, it was the same as (although described 'somewhat differently from) the royalty involved in Vincent et al. v. Bullock et al., 192 La. 1, 187 So. 35, 37, the validity of which received judicial approval.
 

 In the Vincent case the contested interest, reserved by the plaintiffs in perpetuity when they sold the land, was described as “a one-sixteenth (jdeth) royalty of all the oil, gas and other minerals produced and saved from said premises * * *”. Regarding this we said that what the plaintiffs reserved was a full share, free of the cost of production, of Yi6th of the oil, gas and other minerals if and when successful exploration is had upon the land sold by them. Further, we held that the reservation created a real obligation or a real right in favor of the plaintiffs, their heirs or assigns, which was subject to the prescription of ten years liberandi causa. The royalty interest of the plaintiffs therein, in other words, ran with the land for the duration of the prescriptive period (not in perpetuity) and was payable out of. production if and when obtained either by the landowner or by a lessee.
 

 Unlike that in the Vincent case, the interest here was sold, not reserved; and it was limited to a percentage (%) of the royalties that would accrue under any lease or contract executed by the landowner with a third person. But it was similar in that it was a real obligation in favor of Garland, his heirs or assigns (it ran with the land) ; and it authorized participation in the production obtained under any lease on the property. What Garland bought from Guillory was “the undivided one-fourth
 
 (Yi)
 
 interest in and to all royalties stipulated for or hereafter to be stipulated for, in any oil, gas or mineral lease that may be or has been executed by vendor in favor of third persons * * * ”, such interest “to be continuous and to run with the land into whomsoever’s hands it may fall * * * ”. Thus, the interest under consideration differs from that in the Vincent case only to the extent that here it was. sold, instead of reserved, and the holders, thereof are limited to a participation in production obtained by a lessee/ Fundamentally and basically, however, the two-interests are identical.
 

 
 *336
 
 Of course, in view of the provisions of Civil Code, Articles 2024 and 2034, it would seem reasonable and proper to conclude, as was done on the original hearing of this cause, that a transfer, running with the land, of an interest in royalties hereafter to be stipulated for in any mineral lease that may be executed by the landowner (such was the conveyance made by Guillory to Garland) would constitute an obligation that is null and void because of its being contracted on a potestative condition. These articles read:
 

 "Art. 2024. The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder.”
 

 “Art. 2034. Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself.”
 

 But when consideration is also given to Civil Code, Article 2035 (assuming arguendo that a mineral royalty contract contains a potestative condition), it must be decided that a transfer of that kind is not reprobated by law. It reads: “The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor’s will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void.”
 

 According to this article, which relates to Article 2034, it is not every potestative condition that renders null the obligation to which it is attached. Under the first provision thereof an obligation dependent purely or wholly on the wish or pleasure of the obligor is null; under the second provision, however, an obligation that is conditioned upon the obligor’s performance or non-performance of some substantial act, his failure with respect to which would result in some material detriment or serious sacrifice to him, is not invalid.
 

 A distinction between the two kinds of obligations was recognized by the French commentators. Respecting it, the great jurist Pothier commented:
 

 “It is
 
 of the essence of agreements which consist in promising something that they should produce an obligation in the party making the promise to discharge it; hence it follows, that nothing can be more contradictory to such an obligation, than' an entire liberty in the party making the promise to perform it or not as he may please. An agreement giving such entire liberty would be absolutely void for want of obligation. If, therefore, I agree with you to give you something in case I please, such an agreement is absolutely void.
 

 * * * * * ♦
 

 “Lastly, though I promise something under a condition, .which depends upon my
 
 *337
 
 will whether I will accomplish it or not (condition potestative) as, if I promise to give you ten pistoles in case I go to Paris, the agreement is valid; for it is not entirely in my power to give the money or not, since I can' only refuse to do so in case I refrain from going to Paris. There is then on my part an obligation and a real engagement. L. 3. ff. de legat. 2(a).” Pothier, Vol. 1, Art. IV, Section 7; Evans’ translation, Vol. 1, page 25.
 

 In interpreting Article 1174 of the Code Napoleon, the counterpart of our Civil Code, Article 2034, even though the French Code did not contain the provisions of Louisiana Civil Code, Article 2035, Planiol explained: “ * * * Conditions Purely Potestative. — Article 1174 provides that: ‘An obligation is null whenever it is contracted under a potestative condition on the part of the one who obligates himself.’ It refers to the purely potestative condition, or condition sic voluero : He who contracts under such a condition does not obligate himself, because there does not result therefrom the actual will to bind oneself. But nothing prevents the insertion in a contract of a condition which is a simple potestative condition that is to say, dependent upon the realization of a future event depending upon the will of one of the parties; for example; I will sell you my house if I decide within two years to change my domicile to another department. It is true that the happening of the event depends upon my will, but I am not sure that I shall be able to realize it, and besides in case I change my domicile within’ the delay foreseen " I cannot prevent the contract from producing its effect; the condition is, therefore, not purely potestative on my part * * Planiol, Traite Elementaire de Droit Civil, Vol. 2, Page 417, Chapitre XI, Des Contrats Faits Sous Condition.
 

 The distinction thus shown has heretofore been recognized in the jurisprudence of this state, and by the Federal Circuit Court of Appeal of the Fifth Circuit., Anse La Butte (Le Danois) Oil & Mineral Company, Ltd. v. Babb, 122 La. 415, 47 So. 754; Cockburn v. O’Meara, 5 Cir., 141 F.2d 779; Colbert v. District Grand Lodge No. 21, Grand United Order of Odd Fellows, (First Circuit), La.App., 178 So. 694, 696. In the latter case it was appropriately observed: “The potestative condition reprobated by the Code is that condition or event upon which an obligation depends, and which it is entirely within the will and power o-f the obligor to bring about or hinder, without himself suffering some material detriment or disadvantage. In' other words, it is. where the condition is dependent merely on-the state of mind or whim of the obligor to-do or not to do. But if the condition, although dependent on the will and power of the obligor to bring about or hinder, involves some detriment, disadvantage, or inconvenience to the obligor if he brings; about or hinders the happening of the event on which the obligation depends, then the-condition does not render the obligation null.”
 

 
 *338
 
 Let us test now, under the second provision of Civil Code, Article 2035, the transfer made by Guillory to Garland. Garland’s right to participate in future royalty was conditioned upon the performance by Guillory (or his successor in title) of a substantial act — the execution of a lease contemplating the exploration for oil. Had a third person sought to obtain from Guillory such a lease, the granting of it, of course, depended on his will. A refusal to grant it, however, unquestionably would have resulted in a material detriment to him — his foregoing the receipt of a bonus, of rentals, and possibly of royalties from production under the lease. It follows, therefore, that the transfer herein, dependent on the discussed condition, was not a nullity.
 

 If this were incorrect, almost every sale or reservation of a mineral royalty confected in this state while the property is unleased would be reprobated by our law, including the royalty reservation involved in Vincent et al. v. Bullock et al., supra. In the usual mineral royalty deed the purchaser does not receive from the landowner an obligation to drill or to grant a lease for exploration purposes. All that he acquires is a right attached to the land and the assurance that he will receive his share of the oil produced therefrom if and when successful production results.
 

 Another contention' of appellee herein is that the sale made by Garland on August 4, 1925, and all subsequent sales, concerned mineral rights, not royalty such as was originally conveyed. We find this to be without merit also. An' examination of the several deeds referred to discloses that they relate to the same type and kind of interest as that transferred in the deed from Guillory to Garland.
 

 Finally, counsel for appellee argues that the prescription of ten years liberandi causa (which he specially pleaded) operated, as to all of the appellants, against the royalty sold under the deed of January 19, 1923, irrespective of the minority of the Fenstermaker children; and, further, but in the alternative, that since royalty is not a servitude prescription ran against the major appellants, although it might have been suspended as to the minors.
 

 Considering these alternative arguments in their inverse order, we agree that a mineral royalty interest (one running with the land, a real right) is not a servitude. Such was the conclusion of this court in Vincent et al. v. Bullock et al., supra. We agree also that the minority of the Fenstermaker children had no effect on the royalty claims of the other appellants. The principle of law that the minority of a person causes a suspension of prescription as to his major coproprietors, which has been recognized and applied often in our jurisprudence, springs solely from the provisions of Civil Code, Article 802. This article is found under Title IV “Of Predial Servitudes or Servitudes of Land”, and it relates exclusively to the extinguishment of servitudes. Since a mineral royalty is not
 
 *339
 
 a servitude the discussed legal principle is without application here. See St. Martin Land Company v. Pinckney et al., La.Sup., 33 So.2d 169, and Union Sulpher Company, Inc., v. Lognion et al., La.Sup., 33 So.2d 178, numbered respectively 38,163 and 38,176 on the docket of this court, the decisions in which are today being rendered.
 

 Respecting the issue of the running of prescription against the royalty inherited by the Fenstermaker minors themselves, a different legal situation is presented. In that part of the Civil Code which treats of the liberative prescriptions, we find Article 3554 reading: “Prescription does not run against minors and persons under interdiction, except in the cases specified by law.”
 

 In examining the law for the purpose of ascertaining the excepted cases, we find Civil Code, Article 3541, as amended by Act No. 17 of 1922, reciting:
 

 “The prescription mentioned in the preceding article, and those provided in paragraphs I and II of section three (3) of chapter three (3) of this title, shall run against married women, minors and interdicted persons, reserving, however, to minors and interdicted persons recourse against their tutors or curators.
 

 "This prescription shall also run against persons residing out of the State.”
 

 These provisions, it will be noticed, have reference to Articles 3534 to 3537, inclusive, of the prescription of one year; -to Articles 3538 and 3539, of the prescription of three years; and to Article 3540, of the prescription of five years concerning negotiable and non-negotiable bills and notes. We find nothing in the Civil Code, or in any of our statutes, providing for the running of the liberative prescription of ten years against minors.
 

 Since the prescription of three years, for the payment of money and for accounts due, and of five years, relating to bills and notes, are not suspended as to minors, it would seem that the ten year prescription applicable to royalty rights should also run against them. Especially is this so when the nature of mineral royalty is considered. The owner of such an interest can not go upon the land and explore for minerals; his privilege, as before shown, is restricted to a sharing in production if and when it is obtained by the landowner or a lessee. He has, in other words, only a passive interest in possible production. The fact is, however, that the lawmakers have not removed a minor’s royalty interest from the scope and purview of Civil Code, Article 3554, and we are without authority to do so.
 

 But by reason of minority, the current of prescription is only suspended; it is not interrupted. Thus, on the inheritance by the Fenstermaker children of their mother’s interest in the mineral royalty in question (the mother died May 21, 1928), the prescription which had been running (a period of five years and some months) was suspended as to them.
 

 
 *340
 
 Moreover, the suspension was effective as to each child only for the duration of his or her minority. And, because of this, it is necessary to consider the ages of the several children for the purpose of determining whether or not there was sufficient suspension to prevent, as to their respective interests (1/2048 to each), the tolling of the ten years prescription between January 19, 1923 (the date of the original deed), and February 13, 1942 (the date when the oil producing well was completed).
 

 The names and dates of birth of the children are as follows:
 

 Robert Fenstermaker, August 4, 1927.
 

 Elizabeth Fenstermaker, January 25, 1922.
 

 Charles H. Fenstermaker, Jr., June 22, 1917.
 

 Mrs. Kathryn Fenstermaker Ahrens, September 11, 1912.
 

 Clearly the interests of Robert and Elizabeth Fenstermaker did not prescribe, for both were yet minors on the completion of the well. Likewise, the interest of Charles H. Fenstermaker, Jr., was not lost. As to him, the running of prescription was suspended from the date of his inheritance (May 21, 1928) to that on which he attained his majority (June 22, 1938), or for ten years, one month and one day. When this period of suspension is deducted from the time elapsing between the execution of the Guillory royalty deed and the completion of the well (19 years and 25 days), there remains less than the required prescriptive period of ten years. This is not so, however, with reference to the oldest child, Mrs. Kathryn Fenstermaker Ahrens. The period of suspension as to her was. only five years, three months and twenty days (from the date of inheritance to that, of the attainment of her majority) ; hence,, the prescription of ten years ran. Accordingly, the claim to a royalty interest of Mrs. Kathryn Fenstermaker Ahrens was. correctly rejected by the district court, but the claims of the other children (each for a. 1/2048) must and will be recognized.
 

 For the reasons assigned the judgment of the district court is reversed and set aside in so far as it rejected the demands of Robert Fenstermaker, Elizabeth Fenstermaker and Charles H. Fenstermaker, Jr.,, and there is now judgment recognizing each of those claimants as the owner of a. 1/2048 royalty interest, entitled as such to be paid proportionately out of the funds deposited in the registry of the court. As. to the remainder of the royalty in dispute herein the judgment is affirmed. '
 

 All costs shall be paid out of the disputed funds; however, Arceus Guillory is granted judgment for such costs against all of the litigants who contested his rights herein, except the three named in the preceding paragraph, pursuant to the provisions of Act No. 242 of 1944.
 

 The right to apply for a rehearing is-reserved to appellee and also to the appellants.