## COLBERT v. DISTRICT GRAND LODGE NO. 21, GRAND UNITED ORDER OF ODD FELLOWS. *

No. 1753.

Court of Appeal of Louisiana. First Circuit.

Nov. 6, 1937.

*Rehearing granted Dec. 9, 1937.

Ashton L. Stewart, of Baton Rouge, for appellant.

Breazeale & Sachse, of Baton Rouge, for appellee.

DORE, Judge.

This is a suit on a membership certificate issued by the bureau of endowment of defendant fraternal order to Isaiah Colbert, wherein plaintiff was named beneficiary, to the amount of $500. The insured died on April 5, 1936.

On May 1, 1936, the plaintiff was paid the sum of $100 in part settlement of her claim as beneficiary, and' for the balance signed an "Agreement and Loan Certificate," the principal part of which reads as follows:

"Whereas, the Endowment Bureau of District Grand Lodge No. 21, Grand United Order of Odd Fellows, of Baton Rouge, Louisiana, hereinafter styled the Order, is indebted to the ·undersigned beneficiary in the sum of $500.00 upon its policy of life insurance insuring the life of Isaiah Colbert, now deceased, formerly a member of Lettsworth Lodge No. 10302 of said Order, located at Lettsworth, Louisiana.

"And Whereas, the said Order, faced with a financial crisis, is unable to pay its death claims in full at present, Therefore, in consideration of the payment to me as beneficiary aforesaid, of the sum of One Hundred Dollars, receipt of which is hereby acknowledged, I do consider my claim under said policy as paid in full and for which sum I grant to the said Order full acquittance and discharge of any and all my claims under said policy as paid in full and for which sum I grant to the said Order full acquittance and discharge of any and all sums due me as beneficiary of Isaiah Colbert under said Policy No.　　;
and that the remaining balance on the said policy is to be in effect a loan by me to the said Order, which it has obligated itself to pay as hereinafter set out, all of which is acceptable to me.

"The Order hereby promises to repay the said loan of Four Hundred dollars with interest at the rate of 3% per annum from date under the following conditions:

"(a) The principal to be paid only in the event that after such repayment the Order shall be left possessed of sufficient assets to meet all its liabilities and to maintain a fund for payment of all death claims arising after this date (May 1, 1936), and such agreement, accepted by me, provides that the Order shall have the option to make such repayment whenever it shall be able to do so in accordance with the aforesaid conditions.

"(b) The interest to be paid semi-annually on June 1st and December 1st.

"This certificate is one of a series of Five Hundred (500) of like tenor, amounting in the aggregate to Seventy Thousand Eight Hundred Forty-five Dollars ($70,-845.00) and numbered from one (1) to Five hundred (500), both inclusive."

Plaintiff was paid and accepted a check for $1 on June 1, 1936, to cover interest to that date on this loan agreement, but she refused a check for $6 tendered her on December 1, 1936, for the interest to that date. She filed this suit on March 18th following, and asked for judgment in the sum of $400, with legal interest, being the amount due under the original certificate, less the $100 payment. She made no reference in her petition to the loan agreement nor to the purported settlement of her claim.

The defendant Order filed an exception of prematurity based on a provision in the by-laws of the Order to the effect that no suit at law could be brought on the claim until after three years from the filing of the claim in the office of the secretary of endowment; and on the further ground that plaintiff had signed said loan agreement and no further payments were then due under this agreement, and this agreement was specially pleaded in bar of the suit and was annexed to and made part of the exception.

Plaintiff then filed a supplemental petition in which she admitted signing said loan agreement, and admitted the receipt of the $100 therein mentioned, but she denied that said loan agreement is binding on her for the following reasons: First, that she signed said agreement and received said payment under the belief, due to the representatives of the Order, that the $100 was only a payment on her claim and she was only signing a receipt therefor; second, that she was induced to accept said payment on the representations of the officers of said order that her claim was only one of 500 other like claims amounting to a total of $70,845 due to other persons at that time; and, third, that

said loan agreement was signed by plaintiff without any consideration therefor.

Defendant then filed an exception of no cause of action which was first sustained by the court and the suit dismissed, but later a rehearing was granted, and the exception was referred to the merits. As no further action seems to have been taken on either of the exceptions, they require no further consideration and are considered as abandoned.

Defendant answered denying that it owed plaintiff anything other than the $400 due under the terms of the loan agreement as a novation of the original claim, and set up and urged the validity of the novated loan agreement. The case went to trial and resulted in a judgment of dismissal of plaintiff's suit. From this judgment she has appealed.

■ The trial judge found that the evidence did not show that plaintiff was misled in signing the agreement under the belief that she was signing a receipt only. The trial judge reviewed the facts on this point, and a reading of the evidence does not show that his conclusions on this point are manifestly erroneous. In fact, his conclusions on this point are not seriously questioned here by appellant as she admits that the proof of fraud on this point is mostly inferential.

In support of her allegations of fraud, plaintiff contends that the agent who made the settlement with her led her to believe that the agreement which she signed was merely an extension of time to the Order to enable it to pay its claims; that all of the other beneficiaries were signing similar agreements of extension; that she was helping the Order and the other beneficiaries as well as herself in granting this extension.

A reading of the testimony of the adjuster fails to show such misrepresentations on his part. On the contrary, his testimony shows that he explained to plaintiff fully the condition of the Order and the reason for the loan agreement. On being asked how he explained the agreement to her, he testifies:

"A. I told her we were going to see the different beneficiaries, asking them to sign the adjustment plan to assist the Odd Fellows since they were so far behind with their claims.

"Q. Did you tell her all other beneficiaries were signing? A. No, not all at the same time.

"Q. Did you tell her they had signed at different periods? A. I told her others had signed from time to time.

"Q. You also told her she could get the five hundred dollars? A. I told her she could get her money if the Odd Fellows were ever in a position to pay her."

While there is some conflict in the testimony as to just what the adjuster did tell plaintiff when she signed the loan agreement, yet the preponderance of the evidence supports his version of the transaction. Plaintiff accepted an interest payment on the agreement a month after she had signed it. The loan agreement shows on its face that it is one of a series of 500 of like tenor, amounting in the aggregate to $70,845, and numbered from 1 to 500, both inclusive. The record shows that 378 of these certificates amounting to almost $70,000 were actually issued under the adjustment plan. This was a substantial compliance with the proposal of the Order for the purpose of working out its financial inability to meet at once all of the claims then due. There does not appear to be any fraud on the part of the Order or any of its officers in this plan to relieve its financial embarrassment, but, on the contrary, they were attempting to carry out suggestions made to them by the Insurance Department of the State in putting the affairs of the Order in a satisfactory condition. While it appears that irregular payments have been made on some of these agreements to some of the holders, and while it appears that a few others were settled with on somewhat different terms, yet these differences and preferences do not seem to be very important considered in the light of the plan as a whole. They are certainly not sufficient to show any fraud on plaintiff, nor any intention on the part of the Order to place plaintiff in any worse position than a majority of those who signed similar agreements.

■ Defendant contends, and the trial judge so held, that the payment of the $100 and the giving of the loan agreement operated a novation of the debt; that the original claim under the policy was discharged and a new agreement substituted in its place. Article 2185 of the Civil Code provides that "Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place." One of the means provided by article 2189 of

636

the Civil Code for novating a debt is when a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished. Novation is not presumed, but the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt. Civ.Code, art. 2190.

In this case, the loan agreement itself fully discharges, by its express terms, the original claim under the policy, and substitutes another agreement in its place. There can be no doubt from the agreement itself of the intention of the parties to novate the original debt. The most serious question, and the one most strenuously stressed by appellant, is whether or not there was sufficient consideration to support the new contract intended to novate the original debt.

■ When the insured died, the defendant became unconditionally bound to the plaintiff for the payment of the face value of the policy. There was then no further obligation on the part of the plaintiff to perform any act other than to collect the money. As to her, the obligation was executed. When she entered into the loan agreement by which she agreed to accept a new and different obligation on the part of her debtor to take the place of the former debt, a consideration was necessary to support the new agreement. In so far as the defendant Order is concerned, the discharge of the original debt was the consideration inuring to it for the new contract. Was there any consideration inuring to plaintiff sufficient to support her obligation which was contained in the loan agreement?

■■ Of course, if cannot be said that the new promise of the defendant to pay the balance of the $400 was a sufficient consideration inuring to the plaintiff to support the new contract as the Order was already obligated to pay this amount, and it is well settled that a promise to do what the promisor is already bound to do cannot serve as a consideration for a contract. The promisor in such a case gives up nothing and the promisee gains nothing by the new promise. Corpus Juris, vol. 36, p. 594, § 34.

■ ,But there was a consideration for the new promise. It is shown that defendant, while solvent, was unable to meet its claims because of the lack of ready funds. If all the claims then due had been pressed for payment, it is manifest from the

financial condition of the Order that receivership or other insolvent proceedings would have resulted. In such a case, it is manifest that the claimants, including plaintiff, would have stood the chance of losing all, or a good part, of their claim. This situation is made to appear from the agreement itself as well as the evidence in the case.

The new promise made by plaintiff was to afford her debtor, presently unable to pay its matured debts in full, an opportunity to acquire sufficient funds to pay the claims in full. In consideration for that agreement on her part, she gained the advantage, or at least the chance of having her claim paid in full at a later date. In the meantime, she received a part payment, and was to receive interest on the balance of the claim that was at the time doubtful and uncollectible.

Judgment affirmed.