## COLBERT v. DISTRICT GRAND LODGE No. 21, GRAND UNITED ORDER OF ODD FELLOWS.

### No. 1806.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1938.

For former opinion, see 176 So. 633.

Ashton L. Stewart, of Baton Rouge, for appellant.

Breazeale & Sachse, of Baton Rouge, for appellee.

OTT, Judge.

The issues in this case are stated in our original opinion reported in 176 So. 633. A reference to our original opinion will show that we there passed on all issues raised by the pleadings. We found, as did the trial judge, that plaintiff was not induced by fraud or misrepresentation to accept the loan agreement for the balance of $400 due by defendant order on the certificate issued to her deceased husband, in which loan agreement plaintiff agreed to consider this balance as a loan to the order, to be repaid when the order was in financial condition to do so, the loan to draw interest at the rate of 3. per cent. per annum, payable semiannually. And we also agreed with the trial judge that the loan agreement constituted a novation of the original debt due plaintiff as the beneficiary under the certificate after the death of her husband, and that there was a sufficient consideration to support the loan agreement. These were all the issues raised by the pleadings.

Then on application for a rehearing, plaintiff strenuously urged that the so-called loan agreement, which is set up by the order as a bar to plaintiff's suit for the balance on the original certificate, is null and void for the reason that it contains a potestative condition. Another

ground of nullity is urged against this loan agreement on the application for rehearing and by argument and in brief on the rehearing, to the effect that this loan agreement was a composition with the creditors of the order and is null for the reason that all creditors were not treated alike and on the same basis.

The rehearing was granted solely for the purpose of giving consideration to the question of the alleged potestative condition contained in the loan agreement, as we felt that, if this agreement was void because of this reprobated condition, plaintiff had a right to urge such nullity, even though it was not set up in the pleadings, as the condition attacked is in the agreement itself, and if the agreement is null, plaintiff could pursue her claim under the original certificate.

■ While plaintiff did not plead the nullity of the loan agreement in the lower court on the ground that it was a composition with creditors and invalid for want of equality among them, the question was pressed in the trial court and passed on by it adversely to plaintiff's contention. The point seems to have been discussed in plaintiff's brief in this court on the original hearing, but more in connection with the charge of fraud and misrepresentation on the part of the officers of the order in prevailing on plaintiff to accept this loan agreement in settlement of her claim. As we reviewed the facts on this point in our original opinion, we do not consider it necessary to give further consideration to this phase of the case. However, we might observe in passing that the loan agreements accepted by a large number of creditors of the order did not constitute a composition with creditors, as the order, while financially embarrassed, did not propose to settle with these creditors on a dividend or pro rata basis, but, on the contrary, was endeavoring to pay the claims in full. Such an arrangement could not be classed as a composition with creditors. 11 American Jurisprudence, page 233, Composition with Creditors, § 1.

We will now proceed to a consideration of the question for which the rehearing was granted.

The obligation which the order assumed in the loan agreement to pay plaintiff the balance of $400 was made subject to the following condition: "The principal to be paid only in the event that after such repayment the Order shall be left possessed of sufficient assets to meet all its liabilities and to maintain a fund for payment of all death claims arising after this date (May 1, 1936), and such agreement, accepted by me, provides that the Order shall have the option to make such repayment whenever it shall be able to do so in accordance with the aforesaid conditions."

Of course, the last part of the above condition, to the effect that the order reserves the right to make the payment of the principal of the loan agreement whenever it shall be able to do so in accordance with the foregoing provision, means nothing more than that the order, when its financial condition permits in accordance with the previous statement, will have the right to take up the loan agreement and thereby discharge the obligation and prevent the running of interest.

It is contended that the obligation of the order to pay is subject to the happening of an event, viz., the acquisition by the order of sufficient assets to meet its current liabilities and the accumulation of a fund sufficient to take care of death claims arising thereafter, and that the happening or nonhappening of that event is within the power of the officers of the order to bring about or hinder, making the condition potestative under article 2024 of the Revised Civil Code, and the obligation depending on the condition null under articles 2034 and 2035 of the Civil Code.

We were influenced very largely in granting the rehearing in what we first thought to be a similarity in the condition in the loan agreement involved in this case and the condition involved in the agreement of the International Trade Exhibition, Inc., with its general manager, Avery, wherein Avery agreed to wait for payment of his back salary until the Exhibition had a net cash balance in its treasury of $100,000, and which condition the Supreme Court held to be potestative on the part of the obligor, the Exhibition, and therefore null and void. Avery v. International Trade Exhibition, Inc., 163 La. 454, 112 So. 44, 45. We quote from that case as follows:

"And moreover, the provision that plaintiff should wait until the exposition should have a net cash balance of $100,000 in the treasury was a potestative condition of the kind reprobated by R.C.C. art. 2034. For the moneys of the defendant are un-

der the control of its board of directors, who might always, and without the least impropriety, determine that the interests of the exposition would be better subserved by using or investing its funds, rather than by accumulating a large and idle net cash balance in the treasury."

The same holding was made and practically the same reasons given in the companion case of Wallace v. International Trade Exhibition, 170 La. 55, 127 So. 362.

Our examination of the cases decided by the courts of this state interpreting potestative conditions in contracts has left us with a rather unsettled, if not confused, impression on this subject. In an effort to clarify the matter in our minds, we have examined a number of cases on the subject, and have read the very illuminating and instructive articles on the question in Volume 5, Tulane Law Review, page 396 et seq., where the history and meaning of the condition is given, and Volume 6 of the same Review, beginning at page 23, where the cases on the subject are analyzed and discussed.

The potestative condition reprobated by the Code is that condition or event upon which an obligation depends, and which it is entirely within the will and power of the obligor to bring about or hinder, without himself suffering some material detriment or disadvantage. In other words, it is where the condition is dependent merely on the state of mind or whim of the obligor to do or not to do. But if the condition, although dependent on the will and power of the obligor to bring about or hinder, involves some detriment, disadvantage, or inconvenience to the obligor if he brings about or hinders the happening of the event on which the obligation depends, then the condition does not render the obligation null.

Illustrative of this point, the author of the article in the Tulane Law Review, Volume 5 at page 421, refers to a case by the court of Cassation in France, in the following language:

"A very interesting decision of the court of Cassation (Guilbert et autres, Cass. Req. 24 mars 1873, D. 73, 1,467) may be noted as a final example of the promise containing a condition which closely approaches being purely potestative, but nevertheless does inflict a practical inconvenience upon the obligor. A company provided for a superannuation fund for the benefit of employees who had been in their service for twenty-five years. Later it attempted to avoid its obligation to pay on the ground that its promise was under a purely potestative condition since any employee could be discharged at any time at the will of the company. The court held the promise enforceable, saying that the company had in effect obligated itself either to pay this annuity, or to discharge every employee before he had served them for twenty-five years. The latter alternative in case of a trusted and experienced servant might well be a very definite 'legal detriment.' "

The same position was taken by the Supreme Court of this state in the case of Anse La Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 So. 754, where plaintiff sought to compel defendant to specifically perform a contract wherein he had agreed to convey certain lands to the assignor of plaintiff for $100 per arpent, and plaintiff's assignor had agreed to pay this price for the land in case of success in drilling for mineral substances on the land, which right was granted plaintiff's assignor exclusively, or in case of success in drilling on two adjacent tracts owned by other parties. It was contended in that case that the success, vel non, of the drilling operations on the land being solely within the power of plaintiff's assignor to bring about or hinder, the contract was null as containing a potestative condition. It appears that plaintiff's assignor had acquired one of the other tracts—the Begnaud land—but had no control over the other tract—the Breaux lands—on which the successful drilling operations conditioned the contract. In that case the court made the following pertinent statement tending to show that, even though it had been in the power of the plaintiff or its assignor to render the contract to purchase unenforceable by failure to drill for oil on the lands under its control, yet in doing so, it would have been compelled to renounce the benefits sought when the contract was entered into and on account of which expenses had been incurred. The court said:

"Even as to the Babb and Begnaud lands, the plaintiff company could not have abstained from drilling upon them (in case of nonsuccess upon the Breaux land) without renouncing the benefits which had been sought to be secured by entering into the contracts with reference to them and renouncing the benefit of the large ex-

penses incurred; and the renunciations would not have been such insignificant acts as are described above as depending solely upon the will of the obligor, namely, abstaining from raising one's arm, or drinking a glass of wine, or wearing one's grey hat, but would have meant the sacrifice of important rights."

■ Applying these principles to the condition in the loan agreement, it is readily seen that, while the acquisition of sufficient assets by the defendant order to pay its current liabilities and the accumulation of a fund sufficient to pay death claims arising after that date is within the exclusive power of the officers of the order, yet their failure to bring about that condition could not well be said to arise from a whim or state of mind on their part, but it would involve the very life and success of the order which they represent. Their reason for entering into these loan agreements was in order to give them a chance to make a success of the order and its affairs, and it cannot be said that a decision on the part of these officers not to improve the financial condition of the order would be no detriment or disadvantage to it. Such a decision would mean the death of the order which they were trying to continue as the insurance department of the state would not let the order continue in an insolvent condition for any great length of time.

What we have said in regard to the nature of the condition in the loan agreement and the reason for that condition serves to distinguish this case from the two cases against the Trade Exhibition, supra, regardless of what might be said as to the soundness of that decision in its interpretation of a potestative condition—and we are without authority to question the interpretation there given. As was said in those two cases, there would have been no impropriety in the decision by the directors of the exhibition corporation to invest its funds in safe and productive securities instead of accumulating a large and idle cash reserve fund. In fact, such a decision would not only have been no detriment or disadvantage to the corporation, but it well might have been a benefit and an advantage. In other words, the directors could have defeated the obligation to pay by a mere whim or state of mind in deciding not to accumulate such a large cash fund, thereby defeating the obligation to pay without the corporation standing to suffer any loss or detriment. But, as already stated, the officers of the defendant order could not so easily defeat its obligation to pay the loan agreement. The Exhibition corporation was a private enterprise for profit, but the defendant is a fraternal order operated for the benefit of its members and under the supervision of the insurance department of the state under whose suggestion it acted in issuing these loan agreements to its claimants. The failure of the officers of the order to restore its financial condition would not only operate to the detriment of the order in carrying out its purpose, but would entail the additional detriment of having the insurance department close up its business.

We find no occasion to disturb our former decision, and, for the foregoing reasons, our former decree is reinstated and made the final judgment of the court.