**Hartford DURANT, Jr.**

v.

**CHEVRON U.S.A., INC.**

**Civ. A. No. 82–2778.**

United States District Court,
E.D. Louisiana.

Sept. 25, 1984.

W. Henry Sanders, Jena, La., for plaintiff.

John T. Nesser, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendant.

Robert A. Redwine, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for third-party defendant.

Nelson W. Wagar, III, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for intervenor.

## MEMORANDUM OPINION

MENTZ, District Judge.

Two motions for summary judgment are now indirectly before the Court in this case. Both were submitted by third-party defendants Tilden J. Elliott Contractors, Inc. ("Elliott") and Northeastern Fire Insurance Company of Pennsylvania ("Northeastern"), Elliott's insurer, against the third-party plaintiff, Chevron U.S.A., Inc. ("Chevron"). The first motion asks the Court to rule that Chevron's claim for contractual indemnity against Elliott and Northeastern is barred by LSA–R.S. 9:2780, the Louisiana "Oilfield Indemnity Act." The second asks the Court to rule that Chevron's claim is barred, if not by the "Anti-Indemnity Act," as it is sometimes referred to, then by the specific contractual indemnity provisions relevant in this case.

On December 14, 1983, the Court granted Elliott's and Northeastern's first motion for summary judgment and ruled that the second was moot. Chevron then filed a motion for reconsideration. The Court denied this motion on January 16, 1984. At that time, the Court agreed to provide written reasons in support of its original ruling.

After reviewing again the memoranda submitted by counsel, the applicable statute, and the relevant jurisprudence, the Court has now decided that its original ruling was correct. That ruling must, therefore, be upheld.

The plaintiff, Hartford Durant, Jr. ("Durant"), was allegedly injured while working aboard a Chevron platform located on the outer continental shelf in the Gulf of Mexico off the Louisiana coast. At the time of the accident, Durant was employed by Elliott, which had contracted with Chevron by Service Order in 1982 to provide personnel to perform welding work aboard the Chevron platform. Following the accident, Durant sued Chevron. Chevron then brought in Elliott and Northeastern. Against these two, Chevron asserted a right to a defense and to indemnification under the terms of the 1982 Service Order, which incorporated the terms of the 1977 Master Service Agreement between Chevron and Elliott.

■ First, however, since this is a case of first impression, it would be beneficial to review briefly the meaning of LSA–R.S. 9:2780, commonly referred to as the Louisiana Oilfield Indemnity Act. Under R.S. 9:2780, an owner of an offshore platform may no longer invoke the principles of contractual interpretation traditionally applied in Louisiana to determine whether he is owed indemnification against his own negligence or fault. Agreements between parties to contracts affecting the energy industry are *absolutely void* when they provide for indemnity against the indemnitee's sole or concurrent fault. The legislative purpose set out in paragraph (A) is clear—the legislature determined that the indemnity provisions contained in some agreements pertaining to wells for oil, gas, or water or drilling for minerals to the extent those provisions apply to death or bodily injury to persons represent an inequity "foisted" upon certain contractors and their employees. Thus, to protect these contractors the legislature declared null and void and against public policy any provision in any agreement pertaining to the energy industry when such provision requires either defense or indemnification for negligence or strict liability on the part of the indemnitee or an agent or employee of the indemnitee *or an independent contractor* who is directly responsible to the indemnitee. Yet, the underlying contract is still enforceable.

Since this Act is relatively new, there is little case law addressing the potential questions it raises. Yet, the Louisiana Oilfield Indemnity Act has been upheld as constitutional in *Bryant v. Platform Well Service, Inc.*, 563 F.Supp. 760 (E.D.La. 1983). In *Bryant*, the statute was challenged on equal protection grounds, with the fundamental rule being that all persons similarly situated must be treated similarly. The statute only applies to agreements made in the energy industry. However, the Court held that this "singling out" type of classification affected neither a fundamental right nor a suspect group. Therefore, to determine its constitutionality the Court had to determine whether the classification bore a rational relationship to a legitimate state purpose. Judge Collins held that LSA–R.S. 9:2780 does bear a rational relationship to a very important state interest, i.e., the safety of state workers in one of the state's largest industries. 563 F.Supp. at 760.

In another case similar to the case at bar, *Tobin v. Gulf Oil Corporation*, 535 F.Supp. 116 (E.D.La.1982), a defendant filed a motion for summary judgment on a third-party claim for contractual indemnity against the employer in a personal injury action brought by an employee. Judge Schwartz held that although R.S. 9:2780 applies to contracts executed after September 11, 1981, and to accidents occurring after such effective date, it is not applicable to accidents and injuries occurring prior to that date. Also, the court stated that the statute *may* apply to contracts executed prior to the effective date and existing after September 11, 1981 (the effective date of the Act); however, this part of the opinion is dicta, not the law, since that was not the issue being addressed in *Tobin*. But this is essentially the issue the Court is

faced with in the present case. *Bryant* and *Tobin* are the leading cases on this relatively new statute; yet they do not address the main issue that faces this Court now, that is, is a pre-1981 executed Master Service Agreement containing a condition and existing after September 11, 1981, with respect to a post-1981 accident, nullified by Revised Statute 9:2780? Before this issue can be answered, several preliminary questions must be addressed:

(1) What kind of agreement is the Master Service Agreement?

(2) How does the 1977 Master Service Agreement (pre-1981 agreement) relate to the post-1981 Service Order and Agreement?

(3) What effect, if any, does R.S. 9:2780 have on the validity of the Master Service Agreement and the 1982 Service Order and Indemnity Agreement?

The first issue is what kind of agreement is the Master Service Agreement. A master service agreement is quite common in the energy industry. In such an agreement, the company and the contractor agree that the contract shall govern all work between and delineate the obligations of the parties during the term of the agreement. The company, however, is not obligated to offer employment to the contractor, and the contractor is not obligated to accept offers from the company. The agreement merely governs in the event that employment is offered and accepted.

The 1982 Service Order and Indemnity Agreement cannot be fully understood apart from the Master Service Agreement Elliott and Chevron entered into in 1977. That Agreement provides, in pertinent part, that

[A]ll work which the undersigned [Elliot] may hereafter and from time to time perform for your company [Chevron] shall be performed by the undersigned as "Contractor" under and pursuant to the provisions of your "Service Order and Agreement," (your Form CC–122), copy of which is hereto attached, and that the printed provisions on the reverse side of

the "Service Order and Agreement" under the heading "Contractor's Agreement" shall apply to the work so performed, ....

The relevant sections of the 1977 Service Order referred to in the Master Service Agreement read as follows:

Contractor [Elliot] agrees to perform the work as an *independent contractor* and not as an employee of Company [Chevron].... (Emphasis added)

Contractor agrees to defend and hold Company indemnified and harmless from and against any loss, expense, claim or demand for:

(a) injury to or death of Contractor's employees or for damage to or loss of Contractor's property in any way arising out of or connected with the performance by Contractor of services hereunder;

(b) injury to, or death of, third persons or the employees of Company, or for damage to or loss of property of Company or of third persons, in any way arising out of or connected with the performance by Contractor of services hereunder, unless caused solely by the negligence of Company, provided that if such injury, death, damage or loss is caused by the joint or concurrent negligence of Contractor and Company, each shall be liable for one-half of the loss, expense, claim, or demand resulting therefrom.

Company shall have the right, at its option, to participate in the defense of any such suit without relieving Contractor of any obligation hereunder.

The indemnity agreement contained in the 1982 Service Order simply incorporates and reiterates the indemnity agreement contained in the 1977 Service Order. This suggests that, at the time of Durant's accident, Elliott was obligated to defend and indemnify Chevron for any injuries sustained by Elliott's employees, so long as the injuries in any way arose out of or were connected to the services Elliott was providing aboard the Chevron platform. The indemnity agreement thus raises at

least two problems for the Court: Does the agreement require Elliott to defend and indemnify Chevron for all of the relevant injuries, regardless of whether the injuries were caused by Chevron or Elliott, or at least that portion of damages attributable to Elliott? The second problem pertains to the legality of the indemnity agreement itself: To what extent, if any, does the Anti-Indemnity Act limit Chevron's right to a defense and indemnification? The first problem can be disposed of more easily if we begin our analysis with the second problem.

The first part of the Agreement contains a condition which indicates that the indemnity obligation will not come into effect until the condition is fulfilled. Here, the agreement essentially says that the indemnity provisions will be applicable *if* Chevron and Elliott enter into any future service agreements. If such event happens, Elliott will be obligated to indemnify Chevron for any injuries that occur during Elliott's service. Thus, there is a lack of mutuality of obligations between Chevron and Elliott and such a condition in the contract appears to be "potestative." *Oliver v. Home Service Ice Co.*, 161 So. 766 (La.1935).

> A potestative condition is a condition which makes the execution of the agreement depend on an event which is in the power of one or the other contracting parties to bring about or hinder. LSA–C.C. art. 2024. If an agreement containing a potestative condition depending solely on the will of the *obligor* is contracted, it is null. LSA–C.C. art. 2034. In other words, if in an agreement a party binds himself, but his obligation depends solely on a potestative condition which is in the will of the obligor to bring about or hinder, then there is really no obligation and the agreement is null and void. LSA–C.C. 2035. However, only those potestative conditions which are dependent solely upon the will, whim, or caprice of the obligor invalidate contracts. (emphasis, the author's)

*Franks v. Louisiana Health Service & Indemnity Company*, 382 So.2d 1064 (La. App. 2d Cir.1980). The Master Service Agreement is potestative because its provisions will only apply *if* a certain event occurs, that is, if Elliott and Chevron enter into a Service Order and Agreement, then the provisions of the 1977 Master Service Agreement will apply, particularly the indemnity provisions.

■ Here, it must first be determined who is the obligee and who is the obligor. It is important to note that Chevron was not at any time obligated to offer employment to the contractor, Elliott, and Elliott was not obligated to accept said employment. The 1977 Agreement was meant merely to govern in the event that employment was offered and accepted by Chevron and Elliott respectively. Where a party binds himself in an agreement but his obligation depends solely on a potestative condition which is in the will of the obligor to bring about, then there is no obligation and the agreement is null and void; however, only those potestative conditions which are dependent solely upon the will, whim or caprice of an obligor invalidates the contract. *State v. Laconco, Inc.*, 430 So.2d 1376 (La.App. 1st Cir.1983), *Franks v. Louisiana Health Service & Indemnity Co.*, 382 So.2d 1064 (La.App. 2d Cir.1980).

An obligor is a person who has engaged to perform some obligation. Louisiana Civil Code article 2132 states that "He who is bound to do, or not to do, or to give, is indifferently called the obligor, or the debtor; and he to whom the obligation is made is in like manner without distinction called the obligee or the creditor." Here, the obligor in the indemnity agreement seems to be Elliott; Chevron is the obligee. The implementation of the execution of the agreement depends upon the discretion of Chevron, the obligee. It is Chevron who needed to make the offer to Elliott and Chevron is the entity in favor of which the obligation was contracted. Under this view, the condition would not be null and void since the execution of the condition depends on Chevron's will, not the obligor's.

However, this relationship between Chevron and Elliott can be defined a second way—as mentioned, neither Chevron had any obligation to offer employment to Elliott nor Elliott any obligation to accept. In essence, Elliott had the ultimate control over the occurrence of the conditioned event. Even if Chevron offered employment to Elliott, Elliott had the last opportunity to accept or reject the offer. Therefore, ultimately the condition's execution depended upon the will of Elliott, the obligor. Under this interpretation, Elliott had the right to bind itself to indemnify Chevron and thus such obligation is null and void in accordance with LA.C.C. art. 2034.[1] However, Article 2035[2] unequivocally states that if the condition depends on the obligor performing a certain act although the doing of the act depends on its will, then the obligation depending on such condition is not null and void. Here, Elliott must accept Chevron's offer to satisfy the condition and have the Master Service Agreement be activated. Thus, the condition is dependent on Elliott, the obligor, performing the act of acceptance and therefore it would logically follow that the obligation set out in the 1977 agreement to indemnify Chevron is not null and void due to its possible "potestative condition."

However, one line of cases holds that a condition is not even potestative if the exercise or nonexercise of the obligor's will regarding the condition involves some detriment, disadvantage or inconvenience to him. *King v. King*, 185 So.2d 893, *applic. not considered*, 249 La. 479, 187 So.2d 448 (1966); *Colbert v. District Grand Lodge No. 21, Grand United Order of Odd Fellows*, 178 So. 694 (La.App.1938) [when a condition involves some detriment, inconvenience or disadvantage to the obligor, the condition does not render the obligation null.] *Cf. Weil Brothers Colton, Inc. v. Kennington*, 301 So.2d 400 (La.App. 2d Cir.1974) [a condition or stipulation is not destructive of a contract merely because the condition or stipulation is made to depend upon the will of one of the parties; the condition or stipulation has such effect only if it is the obligor who reserves the right to determine whether he shall or shall not act. LSA–C.C. art. 2034.] In the present suit, the condition ultimately was made to depend upon the will of Elliott [to accept or reject Chevron's offer] and if Elliott accepted, then it was obligated to its detriment and inconvenience to indemnify Chevron for any injuries occurring on the platform during Elliott's period of service. Thus under *King* and *Colbert, supra*, the condition in the 1977 Agreement is not rendered null and void. The obligation cannot be even classified as potestative under this line of cases. Thus, regardless whether the condition is potestative or not, the obligation is not null and void under either rationale.

The next issue to be addressed is how does the 1977 Master Agreement relate to the 1982 Service Order. The 1982 Service Order by itself is null and void since all indemnity agreements entered into after the enactment of LSA–R.S. 9:2780 [September 11, 1981] have been declared null by the Louisiana Legislature.[3] Yet, if the 1982 Service Order relates back to the provisions of the 1977 Master Agreement, then the 1982 Service Order which incorporates the 1977 provisions may be valid. The question is when does the agreement's provisions come into effect—the date when the condition is executed or the date that the Agreement was contracted?

---

1. Art. 2034. Nullity of obligation based on potestative condition
 Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself.

2. Art. 2035. Conditions depending upon will of obligor
 The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void.

3. It should be noted that Louisiana articles and statutes are considered to be effective prospectively only, if not specifically stated that they will apply retrospectively as well.

This question has not been answered clearly by the Louisiana courts. Louisiana article 2041 [4] states that once the condition has been complied with, it has a retrospective effect to the day that the engagement was contracted. Applying the article on its face to the situation at hand, the 1982 Service Order is the condition being complied with and once executed it relates back to the original agreement—the 1977 Master Service Agreement. Thus, the 1977 Master Service Agreement would be valid and Elliott would be obligated to indemnify Chevron. However, the case law contradicts the article's apparent meaning. Many cases hold that only the rights and liabilities of the parties, upon compliance, revert to the date of the contract but that the potestative conditional contract does not become a valid and enforceable obligation until the condition is fulfilled. *Fiesta Foods, Inc. v. Ogden,* 159 So.2d 577, 582 (La.App.1963), *reh. denied* 245 La. 956, 162 So.2d 10; *Ardoin v. Central La. Elec. Co., Inc.,* 306 So.2d 348, 353 (La.App.1975), aff'd 318 So.2d 5 (La.1975). Although the rights, obligations and liabilities are determined by the 1977 Master Service Agreement, the contract did not come into effect until the condition was executed in 1982, well after the 1981 enactment of R.S. 9:2780. Thus, under the case law interpretation of Civil Code Article 2041, the 1982 Service Order does relate back to the 1977 Master Service Agreement to define the parties' rights and obligations, but its enforceability does not come into effect until the date the condition is fulfilled, which is 1982. Therefore, pursuant to this interpretation, the 1982 Service Order and the 1977 Master Service Agreement are null and void under R.S. 9:2780, which prohibits such indemnification-type agreements. It is apparent that the code article conflicts with the case law and no final resolution has been made by the Louisiana State courts.

Moreover, the 1977 Master Service Agreement can be classified as an obligation contracted on a suspensive condition, that is, the obligation depends on a future and uncertain event. Article 2043.[5] Here, the 1977 Agreement's execution was dependent on Elliott and Chevron entering into a future service contract. This happening was uncertain because neither was Chevron obligated to offer employment to Elliott nor was Elliott obligated to accept the offer. In essence, neither party was obligated, merely by having signed that agreement, to do anything. Chevron was not thereby obligated to ever call upon Elliott to perform services for Chevron, nor was Elliott obligated thereby to provide those services should Chevron ever decide to call upon Elliott. Chevron and Elliott simply agreed that, if they ever did bind themselves to mutual obligations, those obligations, if and when they ever came into existence, would include the provisions contained on the reverse side of Chevron's "Service Order and Agreement" form which was attached. Those reverse side provisions contained the indemnity language under which Chevron now claims. But Elliott was not obligated to indemnify Chevron simply because of the existence of this 1977 agreement. Something else was required before Elliott's obligation arose, and that something else did not occur until February, 1982, long after the effective date of the Act which nullifies indemnity obligations such as this. That something else was the agreement of both parties that they would actually do something, that they would actually have mutual obligations. The obligation was conditioned on

---

**4.** Art. 2041. Retroactive effect of condition

The condition being complied with, has a retrospective effect to the day that the engagement was contracted; if the creditor dies before the accomplishment of the condition, his rights devolve on his heirs.

**5.** Art. 2043. Kinds of suspensive conditions, effective date of obligations

The obligation contracted on a suspensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.

In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.

this future, uncertain event and thus was a suspensive condition as defined by Civil Code Article 2043.

 It is important to note that the obligation between Chevron and Elliott was contracted on a suspensive and a questionable potestative condition, meaning that the obligation is dependent on the will of one of the parties to execute some future, uncertain event. As previously discussed, it is uncertain whether the condition is purely potestative suspensive, merely potestative suspensive, or just suspensive. Yet, we do not need to make that determination here. The question is when does an obligation contracted on a suspensive condition come into effect. It is unclear whether Civil Code Article 2041, which applies to simple conditions, applies to Article 2043, a suspensive condition. If so, then the problem of which retroactive interpretation to be applied is raised—either the "clear on its face" interpretation or the case law interpretation. The suspensive condition article is located in the Civil Code in a different section subsequent to Article 2041. Therefore, it is arguable that Article 2041 does not apply to suspensive conditions. Moreover, Article 2043(2) states clearly that the obligation cannot be executed until after the event. This means that the contract does not come into being until the condition is met, that it is suspended until such time as the future uncertain event occurs. A condition is "suspensive" when its occurrence is necessary to initiate an obligation. *Zemurray v. Boe,* 235 La. 623, 105 So.2d 243 (1958). When an obligation is dependent on a future and uncertain event, the obligation cannot be executed until after the happening of the event. *Blair v. Diaz,* 342 So.2d 1237, *writ denied* 345 So.2d 59 (La.App. 4th Cir.1977.)

Under this interpretation of Article 2043, the effect of the provisions of the 1977 Master Service Agreement were suspended until 1982 when Chevron and Elliott entered a Service Order and Agreement. 1982 was the time Elliott's obligation to indemnify Chevron came into being, not 1977. Therefore, the Louisiana Oilfield In-demnity Act applies to the 1982 Service Order and Agreement which incorporates the 1977 Master Service Agreement provisions and as such, nullifies it. It is apparent that under several interpretations of the potestative and/or suspensive condition articles the 1977 Master Service Agreement indemnity provisions did not come into effect until the time of the 1982 Service Order, although the parties' obligations in the 1982 Service Order were defined by the 1977 Master Service Agreement. Thus, under this rationale, R.S. 9:2780 nullifies the 1982 Service Order and Agreement and the 1977 Master Service Agreement as against public policy and Elliott is not obligated to indemnify Chevron in this matter.

As already noted, due to the lack of clarity of the code articles and the case law, the potestative suspensive condition could be viewed directly to the contrary—once the condition is complied with then it has a retrospective effect to the date that the engagement was originally contracted. Article 2041. Under this interpretation, Elliott would be obligated to indemnify Chevron since the 1982 Service Order would relate back to the 1977 Master Service Agreement, predating the Louisiana Oilfield Indemnity Act (assuming the act is only prospective in its effect). It is unfortunate that the law in this area is ambiguous and contradictory. However, the Court does not need to decide which interpretation—the retrospective effect of the condition to the time the engagement was contracted or the prospective effect of the condition from the time the event occurred—is correct in order to dispose of this case. Under either interpretation, the issue at bar can be decided by focusing in on the Louisiana Oilfield Indemnity Act itself.

 The Louisiana Oilfield Indemnity Act was enacted to abolish the inequity foisted upon "certain contractors and their employees" by defense or indemnity provisions inserted in contracts pertaining to the energy industry. Thus, to protect these contractors and their employees, these pro-

visions are declared null and void as against public policy in Louisiana when the provision requires either defense or indemnification for negligence or strict liability on the part of the indemnitee. One of the basic principles of tort law is that a person should have freedom to act, but when his acts cause harm to another, he must repair the loss. But when a person can shift his negligence onto another, there is no financial motive for him to engage in activities in the safest and least wasteful manner. For example, if the indemnitee retains control over the performance of the contract, he might consider only the maximum efficiency and profit and disregard potential injury or other damages which may result from his method of operations. If, however, indemnification against his own negligence is not allowed, the prudent employer will consider risk of injury as well as efficiency and profit, thereby avoiding a potestative accident. Note, 43 La. Law Review 189, 191. It is true that persons should be free to contract with each other and they should be allowed within certain parameters to structure their private transactions. However, certain contracts are void as against public policy. Indemnity agreements are not generally invalid *per se,* but in some instances they are warranted to be declared *per se* null. The legislature has deemed that the energy industry's indemnity agreements are one of those instances that warrants nullification due to the extreme inequities foisted upon contractors and their employees.

The 1982 Service Order and Agreement was entered into between Chevron and Elliott after September 11, 1981, the enactment date of the Louisiana Oilfield Indemnity Act, R.S. 9:2780. The legislature has declared such contracts null and void. Thus, the ultimate question in reference to the 1977 Master Service Agreement is whether the Act's nullification effect is only prospective or is it retrospective as well.

In the present case, it is not necessary to determine whether a contract containing a potestative and/or suspensive condition which is complied with has a retrospective effect to the date that the engagement was originally contracted or is only effective from the date on which the condition is complied. Louisiana Revised Statute 9:2780(I) modifies agreements containing potestative and/or suspensive conditions. Section I reads as follows:

I. This Act shall apply to certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this Act shall not apply to a contract providing indemnity to the indemnitee when such contract was executed *before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity* listed in Subsection C. (emphasis added)

The last sentence is the crucial part to the determination of this case. It states that the Louisiana Oilfield Indemnity Act shall *not* apply to any contract containing indemnity provisions when such contract was executed

(1) before the effective date of this Act, September 11, 1981 *and*

(2) which contract governs a specific terminable performance of a specific job or activity.

The *"and"* is very important here. It indicates that any pre-September 11, 1981, contract, including a master service agreement, must meet the above two requirements to escape the R.S. 9:2780 retrospective prohibition of indemnity provisions in energy industry agreements. (*See also* Note, 43 La. Law Review 189 (1982)).

Section I of R.S. 9:2780 states that this act does apply retrospectively as to agreements entered into prior to September 11, 1981, *if* they do *not* specify a specific job or

activity. In the case at bar, the Master Service Agreement was entered into by Chevron and Elliott prior to September 11, 1981; therefore, the first part of the statute's limited exception is met. However, after reviewing the 1977 Master Service Agreement it is clearly evident that the agreement does *not* stipulate a specific terminable performance or a specific job. The agreement leaves this open-ended by way of a potestative and/or suspensive condition. The condition was that *if* Chevron and Elliott enter into any service contract in the future the indemnity provisions noted in the 1977 Master Service Agreement would apply. Therefore, Chevron and Elliott had to enter into a contract to provide services for a specific job in the future before the condition would be met. The parties did this in 1982 by way of a Service Order and Agreement. Thus, the second requirement was not met prior to September 11, 1981 and as a result, the 1977 Master Agreement's indemnitee provisions are null and void and against public policy. R.S. 9:2780. The Louisiana Oilfield Indemnity Act is both prospective and retrospective in effect with a limited exception which the Chevron-Elliott agreement fails to satisfy. Therefore, Chevron is not entitled to any defense or indemnification whatsoever from Elliott and its insurer, Northeastern, since both the 1981 and 1977 agreements are null and void and against public policy per R.S. 9:2780.

Accordingly, the Court affirms its original decision granting Elliott's and Northeastern's first motion for summary judgment and ruling the second motion for summary judgment as moot.