Tyrone JACKSON and Eva Saunders Jackson

v.

**TENNECO OIL COMPANY, et al.**

**Civ. A. No. 84–4677.**

United States District Court, E.D. Louisiana.

Dec. 5, 1985.

---

Michael H. Bagot, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for third-party defendant.

Guy E. Wall, Gordon, Arata, McCollam, Stuart & Duplantis, New Orleans, La., for defendant.

## ORDER AND REASONS

MENTZ, District Judge.

This matter is before the Court upon motion of defendant, Halliburton Services, Inc. (Halliburton) and third party defendant, Highlands Insurance Company (Highlands) for summary judgment as to Tenneco Oil Company's (Tenneco) claims for contractual indemnity, tort indemnity, and coverage under insurance policies issued to Halliburton by Highlands. Halliburton contends that Tenneco's claim for contractual indemnity is barred by the Louisiana Oilfield Indemnity Act, La.Rev.Stat.Ann. 9:2780 (West Supp.1985) ("Indemnity Act:). Halliburton further claims that Tenneco's claim for tort indemnity is barred by § 905(a) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* Highlands avers that Tenneco's third party claim against it for coverage under insurance policies issued to Halliburton is without merit, because the policies issued by Highlands do not cover Tenneco or, in the alternative, are void under the Indemnity Act. For the reasons set forth below, the motion for summary judgment is GRANTED dismissing Tenneco's

claim against Halliburton for tort indemnity, and Tenneco's third party claim for insurance coverage against Highlands. As to Tenneco's claim against Halliburton, the motion for summary judgment is GRANTED insofar as Tenneco seeks indemnity for its own negligence. Halliburton, should Tenneco be exonerated at trial, will be required to reimburse Tenneco its costs of defense.

Plaintiff herein was allegedly injured on or about November 25, 1983 while performing acidation and gravel packing work on a Tenneco platform on the outer continental shelf. At the time of his alleged injury, plaintiff was employed by Halliburton and the parties have stipulated that Halliburton was working for Tenneco pursuant to an August 4, 1980 Master Service or Work Agreement. Paragraph VII of the Agreement contains indemnity provisions which read as follows:

VII. INDEMNITY

A. Company agrees to defend, indemnify and hold Contractor, its subsidiary and affiliate companies, their agents, employees, directors, officers, servants, and insurers, harmless from and against any and all losses, claims, demands, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness or death of any employee of Company or its joint interest owners, which injury, illness or death arises out of or is incident to the work performed under this Contract, and regardless of the cause of such injury, illness or death, even though caused in whole or in part by a pre-existing defect, indemnitees' negligence or strict liability, or other legal fault of indemnitees. Company shall fully defend any such claim, demand or suit as its sole expense, even if the same is groundless. This indemnity shall be limited to the extent necessary for compliance with applicable State and Federal laws.

B. Contractor agrees to defend, indemnify and hold Company, its joint interest owners, its subsidiary and affiliate companies, their agents, employees, directors, officers, servants, and insurers, harmless from and against any and all losses, claims, demands, liabilities or causes of action of every kind and character in favor of any person or party, for injury to or illness or death of any employee of Contractor or any employee of subcontractors of Contractor, which injury, illness or death arises out of or is incident to the work performed under this Contract, and regardless of the cause of such injury, illness or death, even though caused in whole or in party by a pre-existing defect, indemnitees' negligence or strict liability, or other legal fault of indemnitees. Contractor shall fully defend any such claim, demand or suit at its sole expense, even if the same is groundless.

These reciprocal provisions require Halliburton and Tenneco to be responsible for personal injuries sustained by their own employees, regardless of fault. Other contractual provisions require Halliburton to provide certain insurance coverages and name Tenneco as an additional assured on its marine insurance policies.

The 1980 Agreement does not specify a "terminable performance of a specific job or activity". See R.S. 9:2780(I). It is, in fact, an open-ended Master Service Agreement which governs work performed by Halliburton for Tenneco. This Court finds that the execution of the Agreement prior to effective date of the Indemnity Act does not preclude the Act's application to the Agreement. See § 9:2780(I); *Rigby v. Tenneco Oil Co.*, 607 F.Supp. 1247, 1248 (E.D. La.1985); *Home Ins. Co. v. Garber Industries, Inc.*, 588 F.Supp. 1218, 1222 (W.D.La. 1984); *Tobin v. Gulf Oil Corp.*, 535 F.Supp. 116, 117 (E.D.La.1982).

TENNECO'S CONTRACTUAL CLAIMS

Tenneco correctly notes that the application of the Indemnity Act voids only the obligation to indemnify Tenneco for Tenne-

co's negligence or strict liability and does not bar Tenneco's contractual claim against Halliburton for Halliburton's fault or negligence. *See Rigby v. Tenneco Oil Co.,* 607 F.Supp. 1247, 1248 (E.D.La.1985); *Home Ins. Co. v. Garber Indus., Inc.,* 588 F.Supp. 1218, 1222–23 (W.D.La.1984). However, Tenneco also argues that the Indemnity Act is inconsistent with the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2)(A) and § 905(a) of the LHWCA, 33 U.S.C. § 901, *et seq.* This argument was addressed by Judge Schwartz in *Rigby supra,* 607 F.Supp. at 1247–50 and by this Court in *Wilson v. J. Ray McDermott & Company, Inc.,* 616 F.Supp. 1301 (E.D.La.1985). For the reasons set forth in these opinions, the Court finds that R.S. 9:2780 is not inconsistent with federal law.

■ Consequently, Louisiana law governs a platform owner's right to seek contractual indemnity for injuries sustained by non-employees on fixed platforms on the outer continental shelf. *See Rodrigue v. Aetna Cas. & Serv. Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).

### TENNECO'S TORT INDEMNITY CLAIMS

Tenneco contends that tort indemnity is not barred by § 905(a) of the LHWCA. This section provides that:

> The liability of an employer prescribed in Sec. 4 *shall be exclusive and in place of all other liability* of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and *anyone otherwise entitled to recover damages* from such employer at law or in admiralty on account of such injury or death.... (emphasis added)

Notwithstanding jurisprudence to the contrary, Tenneco argues that tort indemnity is not barred in light of *Lockheed Aircraft Corporation v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983).

In *Lockheed* the administrator of the estate of a civilian employee of the United States Navy brought a wrongful death action against the aircraft manufacturer. The manufacturer, in turn, sought indemnity from the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 2671 *et seq.* The Court examined the exclusive liability provision of the Federal Employees' Compensation Act, 5 U.S.C. 8116(c) as well as the earlier case of *Weyerhaeuser Steamship Company v. United States,* 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963). Without ruling on the substantive basis of Lockheed's claim, the court held that the exclusive liability provision of the § 8116(c) did not bar a tort indemnity claim.

Neither *Lockheed* nor *Weyerhaeuser* interpreted the substantive provisions of the LHWCA. A thorough review of the legislative histories shows that Congress has had ample opportunity to and has, in fact, addressed the substantive rights of third parties without even suggesting any intention of making the employer liable in tort to third parties.

Although it cited the existence of "nearly identical language" in the exclusive remedy provisions of the FECA and the LHWCA, the Supreme Court did not rule on the question of whether a third party tortfeasor is entitled to seek tort indemnity from a longshoremen's employer, as Tenneco does here. In fact, the Supreme Court has declined the invitation to hold employers of injured longshoremen liable in either tort indemnity or contribution to third party tortfeasors. *See Halcyon Line v. Haenn Ship Ceiling Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); *Atlantic Coast Line R. Co. v. Erie Lackawana Railroad Company,* 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972).

The Supreme Court's refusal to hold employers liable for tort indemnity to third parties in addition to requiring them to pay compensation benefits to the injured employee is consistent with the compromise

between employers and employees that the LHWCA represents.

The LHWCA provides that a covered employee is entitled to receive compensation benefits from his employer regardless of fault and, in turn, relinquishes his right to a tort recovery from his employer. *See Peters v. No. River Ins. Co. of Morristown, N.J.*, 764 F.2d 306, 310 (5th Cir.1985); *Louviere v. Shell Oil Co.*, 509 F.2d 278, 283 (5th Cir.1975), *cert. denied*, 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976); 33 U.S.C. 905(a). In a third party tort situation such as the instant litigation, the Fifth Circuit, in *Peters, supra*, stated:

> We have recognized that the compensation scheme of the Act furthers at least two other objectives, both of which are particularly relevant to the issue in this case; (1) "placing the burden ultimately on the company whose default caused the injury," *Louviere*, 509 F.2d at 283 (quoting *Italia Societa v. Oregon Stevedoring Co.*, 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964) ), and (2) "protect[ing] employers who are subject to absolute liability by the Act," id. (quoting *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 412, 74 S.Ct. 202, 206, 98 L.Ed. 143 (1953). The Act, as interpreted by the Supreme Court, furthers these objectives by (1) preserving a compensated worker's remedies against third parties; (2) allowing the employer in certain circumstances to assert the worker's rights against third parties when the worker has failed to do so; (3) denying third parties a right of contribution or indemnity from the employer even when the employer is at fault; (4) allowing the employer to recoup from third-party recoveries the benefits paid to the worker even if the employer is at fault; and (5) preserving the employer's right to assert its own independent cause of action against third parties for recovery of the compensation benefits paid to the worker.

764 F.2d at 310

To allow Tenneco to assert a tort indemnity claim against Halliburton would not only frustrate the purposes of the LHWCA as set out in *Peters, supra*, but would contravene the controlling jurisprudence in this Circuit.

The controlling jurisprudence in the Fifth Circuit is *Ocean Drilling and Exploration Co. v. Berry Brothers Oilfield Service*, 377 F.2d 511 (5th Cir.1967), *cert. denied*, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed. 118 (1967), in which Odeco claimed a right to tort indemnification from Berry Brothers, the employer of a longshoreman injured on a fixed Odeco platform on the outer continental shelf. The Fifth Circuit noted that the plaintiff was receiving benefits from Berry Brothers pursuant to § 905(a) of the LHWCA. The Court examined § 905(a) of the LHWCA and *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corporation*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and stated that the obvious purpose of this section,

> is to make the statutory liability of an employer to contribute to its employees compensation the exclusive liability *of such employer to its employees, or to anyone* claiming under or through such employee, *on account of his injury or death arising out of that employment.* In return, the employee, and those claiming under or through him, are given a substantial *quid pro quo* in the form of an assured compensation, regardless of fault, as a substitute for their excluded claims. 377 F.2d at 514, *citing*, 350 U.S. at 129 [76 S.Ct. at 235] (emphasis in original).

Odeco's tort indemnity claim was dismissed on the basis that "the Act's [LHWCA] exclusive liability provision effectively abrogates any independent tort liability of the employer to its employees, thereby eliminating any basis which may have existed for indemnification on a tort theory. *Id.* See also, Olsen v. Shell Oil Company, 595 F.2d 1099, 1103 (5th Cir.1979).

The *Halcyon* and *Atlantic Coastline* opinions were dismissed as irrelevant in a footnote by the Supreme Court in *Lock-*

*heed.* In *Lockheed,* the Supreme Court did not overrule these decisions nor did it address the *Berry Brothers* decision and its progeny. In the footnote, the *Lockheed* majority dismissed the LHWCA cases noted in the dissenting opinion and suggested that *Halcyon* left open the question of whether a right to contribution would be subject to the LHWCA's exclusive liability provisions. 460 U.S. at 197, n. 8, 103 S.Ct. at 1037, n. 8, 74 L.Ed.2d at 914, n. 8, *citing* 342 U.S. at 286, n. 12, 72 S.Ct. at 277, n. 12, 96 L.Ed. 318.

The *Halcyon* court did not address this issue. Rather, it referred to circuit court rulings which held that § 905(a) precluded any action for tort indemnity or contribution against a longshoreman's employer. *See American Mutual and Liability Insurance Co. v. Matthews,* 182 F.2d 322, 1950 A.M.C. 1272 (2nd Cir. 1950); *Slattery v. Marra Brothers,* 186 F.2d 134, 1951 A.M.C. 183 (2nd Cir.1951). The *Matthews* court noted that "to impose a noncontractual duty of contribution on the employer is *pro tanto* to deprive him of the immunity which the statute grants him in exchange for his absolute, though limited, liability to secure compensation to his employees". 182 F.2d at 324, 1950 A.M.C. at 1275.

■ It is clear, therefore, that *Lockheed* does not overrule the *Berry Brothers* decision and subsequent cases which have limited an employer's liability under § 905(a) of the LHWCA to the provision of compensation benefits to the injured employee or his survivors. *Lockheed* did not decide the question of tort indemnity under the LHWCA, which is a different act, with a different purpose from that of the FECA. A recent decision involving a tort indemnity claim under § 905(a) found *Lockheed* distinguishable on this ground. *See Causey v. K & B Equipment Company, Inc.,* 467 So.2d 1266 (La.App. 4th Cir.1985).

Even if this Court found *Lockheed* to be either binding or persuasive authority, the decision does not open the floodgates for tort indemnity or contribution claims. In the instant case, the applicable substantive law is that of Louisiana, since jurisdiction arises under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* and diversity of citizenship.

In Louisiana, a party obligated to pay compensation is not solidarily liable with another party answerable in damages under La.Civ.Code Art. 2315. The Workmen's Compensation Act provides a substantive exception to the rule of Article 2315. An employer whose fault causes damage to an employee is not required to repair the damage. The employee has no cause of action under Article 2315 against the employer for damages for injury sustained in the course and scope of his employment due to the employer's fault. *Cripe v. Haynes,* 350 So.2d 956, 960 (La. App.2d Cir.1977); LSA–R.S. 23:1032; *Dandridge v. Fidelity & Casualty Co.,* 192 So. 887 (La.App.2d Cir.1939); *Shumake v. Home Indemnity Co.,* 68 So.2d 789 (La. App.2d Cir.1953).

Under Louisiana law, joint tortfeasors who are each answerable for damage caused by their acts or omissions are answerable in solido. La.Civ.Code Ann. Art. 2324; *Moss v. Guarisco,* 409 So.2d 323 (La.App. 1st Cir.1981), *writ denied,* 412 So.2d 540 (La.1982). For the employer and third party tortfeasor to be solidary obligors, the payment of compensation benefits by the employer must have the effect of extinguishing the plaintiff's right to assert these amounts as elements of damage owed by the third party tortfeasor. See La.Civ.Code Ann. 1794 (West Supp.1985) (formerly Civil Code Art. 2091). Since payment of compensation benefits under either the Louisiana Workmen's Compensation Act, La.Rev.Stat.Ann.R.S. 23:1021 *et seq.,* or the LHWCA, 33 U.S.C. § 901 *et seq.,* does not extinguish an employee's right to pursue third parties for all damages sustained as a result of the third party's negligence, the compensation employer is not solidarily liable with a negligent third par-

ty, regardless of the extent to which the employer may have been concurrently negligent. *See Cripe v. Haynes, supra,* 350 So.2d at 960; *Sanderson v. Binnings Construction Company,* 172 So.2d 721 (La. App. 4th Cir.1965); *Hebert v. Blankenship,* 187 So.2d 798 (La.App. 3d Cir.1966); *Phillips v. Houston Fire and Casualty Insurance Company,* 219 F.Supp. 420 (W.D.La. 1963); *Brenham v. Southern Pacific Company,* 328 F.Supp. 119 (W.D.La.1971), *aff'd,* 469 F.2d 1095 (5th Cir.1972), *cert. denied, Southern Pacific Transportation Company v. Sutton's Steel & Supply, Inc.,* 409 U.S. 1061, 93 S.Ct. 560, 34 L.Ed.2d 513 (1972).

The exclusive liability language of the Louisiana Workmen's Compensation Act, which is narrower than that found in the LHWCA, has been held to bar actions against the employer for indemnity or contribution. *See, Moak v. Link Belt Company,* 229 So.2d 395 (La.App. 4th Cir.1969), *dismissed in part, reversed in part on other grounds,* 257 La. 281, 242 So.2d 515 (1970); *Badeaux v. Patterson Truckline, Inc.,* 247 So.2d 875 (La.App.3d Cir.1971), *writ denied,* 259 La. 77, 249 So.2d 209 (1971); *Bagwell v. South Louisiana Electric Co-Op Association,* 228 So.2d 555 (La. App.3d Cir.1969).

The substantive law of Louisiana, which is the applicable law in this case, is that the party who is compelled to pay damages to an injured claimant may not demand contribution or indemnity from the claimant's compensation employer, even where the third party is only technically at fault. Both the LHWCA and the Louisiana Workmen's Compensation Act relieve the employer of any liability it may have to its employees under La.Civ.Code Ann.Art. 2315. The employer's duty to pay compensation benefits to his injured employee arises out of the contract of employment, not out of a theory that the employer is a tortfeasor. Consequently, the compensation employer cannot be a joint tortfeasor with the third party as to its employees; third parties thus have no basis under any theory of tort law to demand indemnity. *See Bagwell, supra,* and *Sanderson, supra.*

As in the Louisiana compensation scheme, the LHWCA imposes an obligation upon employers to pay compensation benefits to employees injured in the course and scope of their employment, which obligation "shall be exclusive and in place of all other liability...." 33 U.S.C. § 905(a). Under 33 U.S.C. 933(a), the employee may prosecute an action against a third party without losing his right to receive compensation. The result achieved is identical to that reached under Louisiana substantive law. *See* La.Rev.Stat.Ann.R.S. 23:1101 (West Supp.1985).

The Supreme Court has long recognized that workers' compensation schemes exist, in part, to provide "for employers a liability which is fixed and determinate." *Bradford Electric Light Co. v. Clabber,* 286 U.S. 145, 159, 52 S.Ct. 571, 576, 76 L.Ed. 1026 (1932). Such a result is not achieved by imposing tort liability on employers through the back door. To allow such a result would upset the *quid pro quo* which the compensation schemes created limiting an employee's liability to the payment of compensation benefits to injured employees and place employers in the position of being potentially liable for *both* full compensation benefit and for all damages available in tort. The practical effect of such a situation would be to make the employer twice liable for the same event, magnify its potential liability beyond that of an ordinary tortfeasor, penalize it for making voluntary compensation payments, and such a result would frustrate the avowed purposes of the Act. *See, Peters v. No. River Ins. Co. of Morristown, N.J., supra,* 764 F.2d at 310. Further, to allow third party tortfeasors to assert third party tort indemnity claims against employers would vest them with rights not held by or flowing through the claimant, but arising out of the claimant's injuries. This is not the result intended by Congress.

Finally, it should be noted that the result sought by Tenneco would result in the anomalous situation in which platform workers walk into and out of situations where the employer would be liable for tort indemnity. For example, a platform worker injured on a fixed platform on the outer continental shelf would expose his employer to a claim for indemnification or contribution by the platform owner. If the worker was injured on a fixed platform in territorial waters, no claim for indemnification or contribution could be asserted against his employer. *Cf. Herb's Welding, Inc. v. Gray,* 470 U.S. ——, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), *on remand,* 766 F.2d 898 (5th Cir.1985). This Court's review of the legislative history behind the LHWCA and the existing jurisprudence demands that Tenneco's claim for tort indemnity be rejected.

## TENNECO'S THIRD PARTY BENEFICIARY CLAIM

Tenneco claims to be a third party beneficiary under the Highlands' policy by virtue of its 1980 Master Work or Service Contract with Halliburton. The 1980 Agreement only required Halliburton to name Tenneco as an additional assured on its marine insurance policies. Halliburton was not otherwise required to name Tenneco in its other policies and did not do so.

A contract is a *stipulation pour autrui* if it clearly reveals that the intent of the contracting parties was to provide a benefit to a third party. *Wallace v. Texaco, Inc.,* 681 F.2d 1088, 1090 (5th Cir.1982). However, for one to be the beneficiary of a *stipulation pour autrui,* he must not be a party to the contract which stipulates on his behalf. *Carl Heck Engineers v. Haselden & Assoc., Inc.,* 316 So.2d 890 (La.App. 1st Cir.1975), *writ refused,* 320 So.2d 912 (La.1975).

 Tenneco's third party beneficiary claims must be rejected. First, Tenneco as a party to the contract, may not claim the status of a third party beneficiary. Second, the contract does not require that Tenneco be named as an additional assured on the policy before this Court. Accordingly, Tenneco has no valid claim to protection on indemnity under the Highlands policies. Furthermore, even if it could be said that Tenneco was entitled to be named under these policies or claim the protection of these policies for its own negligence, such a claim would be invalid and unenforceable under La.Rev.Stat.Ann.R.S. 9:2780(G). In fact, this Court notes that identical claims by Tenneco for protection under insurances policies issued to a subcontractor were presented to Judge Schwartz in *Rigby, supra,* 607 F.Supp. at 1250.

In sum, this Court finds that Tenneco's third party beneficiary claim is without merit.

## CONCLUSION

For the foregoing reasons, Tenneco's claim for tort indemnity against Halliburton is DISMISSED. Tenneco's claim against Highlands for insurance coverage is DISMISSED. Tenneco's claim for contractual indemnity against Halliburton is DISMISSED insofar as Tenneco seeks indemnity for its own negligence or fault. Tenneco's claim for attorney's fees and costs of defense is still before this Court. If, and only if Tenneco completely exonerates itself at trial, may Tenneco assert this claim against Halliburton. If, at trial, Tenneco is found to be one percent at fault, its claim for attorneys fees and costs of defense will be DISMISSED.

## ON RECONSIDERATION

The Court, after a careful study of the recent Fifth Circuit opinions in *Sullen v. Missouri Pacific Railroad Company,* 750 F.2d 428 (5th Cir.1985) and *Laird v. Shell Oil Co.,* 770 F.2d 508 (5th Cir.1985), has reconsidered *sua sponte* that portion of its original opinion which dealt with Tenneco's contractual claims for attorney's fees and

costs of defense. Plaintiff's complaint alleges various acts of negligence against Halliburton, Bootstrap and Tenneco. However, plaintiff's claims against Halliburton, his employer, were dismissed by summary judgment. Thus, the record now contains only plaintiff's allegations against Tenneco and Bootstrap.

Paragraph VII.B. of the 1980 Master Service or Work Agreement (duplicated at beginning of opinion) requires that Halliburton defend and indemnify Tenneco for any claims made by any of its employees, or its subcontractor's employees, even where Tenneco is either strictly liable, concurrently negligent or solely at fault. In *Sullen* the Fifth Circuit in pertinent part held that

> Louisiana law is definite and certain. Whether a party is obliged to tender a defense to another party depends entirely upon the allegations in the precipitating pleadings. [citations omitted] ... In determining whether an indemnitor or an insurer is obligated to defend an indemnitee or insured under the terms of an indemnity or insurance contract, the Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend. [citations omitted] ...
>
> ... we conclude that unless the contract of indemnity specifically provides for costs of defense as a separate item of indemnification, the indemnitor has no obligation to defend if the petition alleges facts which, if proven, would establish liability of the indemnitee but preclude coverage under the indemnity agreement.

750 F.2d at 433–34. This case essentially provides a two-step test. The Court must first review the indemnity agreement in question and determine whether the contract for indemnity specifically provides a separate item for costs of defense. If the indemnity contract does not contain a separate item for cost of defense, then the trier of fact must review the petition and determine if it alleges facts which, if proven, would establish liability on part on the indemnitee but precludes coverage under the indemnity agreement.

*Sullen* teaches that where an indemnity agreement contains a specific provision requiring the indemnitor to provide and pay for the defense of the indemnitee, the indemnitor has an obligation to defend the indemnitee. 750 F.2d at 433–34. In this case, the Agreement does not contain a specific costs of defense provision. Thus, under *Sullen*, if an agreement between the indemnitor and the indemnitee does not contain a specific provision obligating the indemnitor to pay for the defense of the indemnitee, the indemnitor has no obligation to defend the indemnitee where the pleadings allege facts which, if proven at trial, would establish the indemnitee's liability but eliminate coverage under the indemnity agreement. 750 F.2d at 433–34. Focusing exclusively on the pleadings and the broad language contained in Paragraph VII.B. of the Agreement, this court concludes that plaintiff's complaint, which alleges fault against Tenneco, Halliburton and Bootstrap does not, on its face, preclude coverage under the Agreement.

The required analysis does not stop with this Court's consideration of *Sullen*. If coverage is not precluded by the indemnity agreement, then the Court must look at the applicability of the Louisiana Oilfield Indemnity Act of 1981, Louisiana Revised Statutes Annotated § 9:2780. (West Supp. 1985). After reviewing the Act, this Court concludes that the duty to defend as expressed in the Agreement is void and unenforceable as a matter of law because it violates the clear language contained in the Indemnity Act. The statute reads in pertinent part as follows:

§ 2780. Certain indemnification agreements invalid

A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indem-

nity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. *It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.*

B. *Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.* (emphasis added).

Agreements between parties to contracts affecting the energy industry are *absolutely void* when they provide for indemnity against the indemnitee's sole or concurrent fault. *Durant v. Chevron U.S.A., Inc.,* 594 F.Supp. 527, 529 (E.D.La.1984), *aff'd on rehearing,* 613 F.Supp. 1189 (E.D.La. 1985). The Louisiana legislature in order to protect certain contractors and their employees from an inequity being "foisted" upon them declared null and void any provision in any agreement pertaining to the energy industry when such provision re-

quires either defense or indemnification for negligence or strict liability on the part of the indemnitee. 594 F.Supp. at 529.

■ The Agreement between Halliburton and Tenneco requires Halliburton to defend and/or indemnify Tenneco even when Tenneco is strictly liable or solely or concurrently at fault. Thus, the indemnity provision violates Louisiana's clear public policy expressed in La.Rev.Stat.Ann. § 9:2780(A) and (B). This Court holds that the indemnity provision requiring Halliburton to defend and/or indemnify Tenneco for Tenneco's liability as the owner or custodian of a defective thing (i.e. strict liability) or for its sole or concurrent fault is void and unenforceable as a matter of Louisiana statutory law. This does not preclude Tenneco from claiming contractual indemnity from Halliburton for Halliburton's fault. *See Home Insurance Co. v. Garber Industries, Inc.,* 588 F.Supp. 1218, 1222–23 (W.D. La.1984); *Rigby v. Tenneco Oil Co.,* 607 F.Supp. 1247, 1248 (E.D.La.1985); *Wilson v. J. Ray McDermott, Inc.,* 616 F.Supp. 1301, 1305 (E.D.La.1985). Furthermore, Halliburton has not established any legal basis to annul its obligation to indemnify Tenneco for Halliburton's fault.

In sum, Tenneco cannot enforce the Agreement and require Halliburton to defend and indemnify Tenneco against its own negligence or fault. However, if and only if Tenneco completely exonerates itself at trial, may Tenneco assert its claim for costs of defense and attorney's fees against Halliburton.

Accordingly,

The Court's earlier ruling on Highlands' and Halliburton's motion for summary judgment is PROPER and CORRECT.